# WINDHAM COUNTY.

## FEBRUARY TERM, 1874.

### [CONTINUED FROM VOL. 46, PAGE 707.]

THE EUREKA MARBLE COMPANY, WYMAN FLINT, J. G. FLINT, W. H. JOHNSON, GEORGE H. BABBITT, JOHN C. BARNES, S. O. DEARBORN, GEORGE HART, W. L. VAN ALSTYNE, LYMAN BENNETT, AND JOHN PROUT, W. H. SMITH, AND W. CURTIS, ADMINISTRATORS OF WILLIAM F. BARNES'S ESTATE, *v.* THE WINDSOR MANUFACTURING COMPANY AND E. G. LAMSON.

### [IN CHANCERY.]

*Parties. Demurrer. Prayer. Guarantor.*

As a general rule, stockholders in a corporation can act only through the corporation; and all causes of action are to be prosecuted in the name of the corporation.

When improper parties are joined as orators, the objection may now be taken by demurrer.

When the assignment of a contract passes only the equitable title therein, the assignor is a proper party to a bill brought thereon.

There are many cases where defendants have not a co-extensive common interest or relation, and yet are properly joined as defendants.

Hence, when a contract was made in the name of the principal alone, and for further assurance another was made concerning the same subject-matter in the name of the principal, to which the agent added his personal guaranty, it was *held*, that the principal and agent were properly joined as defendants to a bill brought on said contracts.

If the joint relief sought in the special prayer, cannot be granted in the form asked, if the orators are entitled to relief upon the grounds alleged in the bill, the general prayer is sufficient to enable the court to grant relief adapted to the case.

A guarantor of title is not liable upon his guaranty, while he is yet defending a suit against his guarantee concerning the property, and before his guarantee has been damnified by the payment of damages to the party bringing the suit.

APPEAL from the court of chancery. The bill alleged that the said Wyman Flint, J. G. Flint, W. H. Johnson, George H. Bab-

bitt, John C. Barnes, acting as the agent of the said William F. Barnes, deceased, and S. O. Dearborn, W. L. Van Alstyne, and Lyman Bennett, in November, 1867, had agreed together to purchase a marble quarry in Rutland, and to organize themselves into a corporation for the purpose of working the same ; that in said month, the orators, with the exception of the Eureka Marble Company, had become the owners of a marble quarry in Rutland, which was to be assigned to a corporation to be thereafter organized ; that early in December, 1867, the defendant Lamson, then residing in Windsor county, applied to the orators Wyman Flint, W. H. Johnson, and George H. Babbitt, and represented himself as being the agent and president of a corporation organized under the laws of this state by the name of " Windsor Manufacturing Company," and that he was the original and first inventor of a machine called " Lamson's Patent Steam Channeling Machine," which was the best and most approved machine for extracting stone or marble from the ledge, and that said Windsor Manufacturing Company was manufacturing said machines, and that he had been informed that the said Flint, Johnson, and Babbitt, in connection with the other orators, with the exception of the Eureka Marble Company, had become the owners of a marble quarry in Rutland, and were intending to work the same, and that he expressed a wish to sell one of his said machines to be used by the orators in said quarry ; that the said Flint, Johnson, and Babbitt then informed the said Lamson, that they, in conjunction with the other orators, except the Eureka Marble Company, had purchased land in Rutland on which was a marble quarry, which they, in conjunction with the other orators, intended to open and work the then next spring, and that in the meantime, and before opening the same, they should organize themselves into a corporation under the statute law of Vermont, and should not open or work said quarry in their individual capacity, and that whatever contract they might make with the said Lamson for a machine, must be made by them for and in behalf of themselves and their associates when they should organize themselves into a corporation as aforesaid ; that thereupon a negotiation was entered into between the said Lamson, president and agent as aforesaid, and the said

Flint, Johnson, and Babbitt, for and in behalf of themselves and their associates, which resulted in a written agreement in the words and figures following :

"WINDSOR, VT., Dec. 9, 1867.

"We, the subscribers, this day order of the Windsor Manufacturing Company, one of their 'Lamson's Patent Stone Channeling Machines.' * * * The machine to be completed, and delivered on cars at Windsor, Vermont, by the first day of April, 1868. Price $6000 ; $1000 to be paid on delivery of machine, $1000 to be paid by note on 6 mos., $4000 by note on 12 mos., at 7 per cent. interest ; the machine work to be done in a good workman-like manner. The Windsor Manufacturing Company on their part agree to defend the patent-right in case any litigation is commenced, and to save them harmless from loss in case any damages are sustained by means of infringements of other patents.

"W. & J. G. FLINT,
W. H. JOHNSON,
GEO. H. BABBITT,
WINDSOR M'F'G CO.,
E. G. LAMSON,
*Pres't ;*"

that said Flint, Johnson, and Babbitt, entered into said agreement for and in behalf of themselves and their associates, with full authority from said associates so to do, with an express understanding and agreement that said machine was to be paid for; become the property of, and used by, a corporation thereafter to be formed as aforesaid, and that all the rights acquired and liabilities incurred by said Flint, Johnson, and Babbitt, and by said Windsor Manufacturing Company, by the terms of said contract, were to be transferred to a corporation subsequently to be organized, together with said machine, which was known and assented to by said Lamson, for and in behalf of said Windsor Manufacturing Company ; that on or about the 20th of February, 1868, the said Wyman Flint and J. G. Flint, by their firm name of W. & J. G. Flint, and W. L. Van Alstyne, W. H. Johnson, S. O. Dearborn, G. H. Babbitt, John E. Barnes, George Hart, and Lyman Bennett, signed articles of association under seal, whereby they constituted themselves, their successors and assigns, a body politic and corporate by the name of the "Rutland County Marble Company," for the purpose of quarrying and manufacturing

marble ; that said Van Alstyne sold all his interest to said Bennett, on March 11, 1868 ; that their full organization as a corporation was not perfected and stock subscribed for, until the June following, and that in the meantime, and on or about the first day of April, 1868, said Windsor Manufacturing Company had completed the machine mentioned in said contract, and was ready to deliver the same, but that the organization of said corporation had not proceeded so far as to enable it to enter into contracts, and as some of the parties in interest desired to have a contract for said machine more in detail than the one aforesaid, making the said Lamson personally responsible for the covenants contained in that contract, and on the part of said Windsor Manufacturing Company to be kept and performed, an agreement was entered into by the said Lamson and Windsor Manufacturing Company on the one part, and W. &. J. G. Flint, W. H. Johnson, George H. Babbitt, W. L. Van Alstyne, S. O. Dearborn, John E. Barnes, and George Hart, on the other part, in the words and figures following :

" WINDSOR, Vt., April 1st, 1868.

" Know all men by these presents, that W. & J. G. Flint, W. H. Johnson, Geo. H. Babbitt, S. O. Dearborn, John E. Barnes, W. L. Van Alstyne, and George Hart, have this day bought of E. G. Lamson, owner of stone channelling machine, one of said machines, built by Windsor Manufacturing Company, in accordance with contract made and signed December 9th, 1867 ; and the said E. G. Lamson has received $6,000 in payment for the said Machine No. 6.

" And the said Lamson, on his part in said sale, agrees that the parties shall have the right to run the same machine, and in case any litigation is commenced against the parties claiming an infringement on other patents, said E. G. Lamson and the Windsor Manufacturing Company agree to defend the patent-right, and to save them harmless from loss in case any damages are awarded by any legal courts for infringements on other patents, and legal costs arising from the same in all suits, and step in and defend the suits, which ever way they are decided.

" The Windsor Manufacturing Company further agrees, that if any repairs or new improvements are required and desired to be put upon said machine, they will do it at their regular price

55

for machine work, and no further charge for use of patents, only a fair charge for the work and material used.

> " E. G. LAMSON,        [L. S.]
> WINDSOR M'F'G. CO.,     [L. S.]
>         E. G. LAMSON, *Pres't.*"

The bill further alleged, that said last-named agreement was also entered into with the express understanding that said machine was bought for the use, and was to become the property, of said association as soon as its organization should be perfected, and that said corporation was to pay therefor, and was also entered into by said Flints and their associates for and in behalf of such proposed corporation, and that said Lamson and said Windsor Manufacturing Company well understood that said Flints and their associates were not to use said machine except in their capacity as a corporation, and that the covenants contained in said contracts on the part of the said Windsor Manufacturing Company and said Lamson, were to inure to the benefit of the corporation thereafter to be organized, and to which damages must accrue, if any arose, for the breach of said contracts or either of them ; that the legislature, at its October session, 1867, duly chartered a corporation by the name of the " Green Mountain Quarrying and Manufacturing Company," with power to quarry, manufacture, buy, and sell marble, whereof Geo. A. Merrill, John Prout, Frederic Chaffee, Edwin A. Morse, Fayette P. Brown, Z. V. K. Willson, Rockwood Barrett, Thomas J. Ormsbee, E. Foster Cook, and Francis A. Fisher, were the corporators ; and said act was set out in *hæc verba ;* that instead of perfecting an organization under said articles of association as was originally intended, the persons signing the same organized under the charter aforesaid, subscribed for the stock, duly elected officers, enacted by-laws, and in every respect complied with the provisions thereof ; that upon due application to the legislature for that purpose, the name of said corporation was changed to the " Eureka Marble Company ;" that some time in May, 1868, said channelling machine was taken by the agents and officers of said Green Mountain Quarrying and Manufacturing Company, and put to the use, in the place and manner, designed by the parties when said

agreements were entered into ; that said company used the same through the summer and fall of 1868, when it was found defective in the execution of its work in some respects, and that late that fall, or in the early winter of 1868–9, it was found that, to render said machine effective and useful as was recommended at the time of its purchase and delivery, repairs to a considerable extent had got to be made thereon, and were made by said Windsor Manufacturing Company at an expense of about $800 ; that the agreed price for said machine, with the interest thereon, had been fully paid by the Eureka Marble Company, and that the Windsor Manufacturing Company and said Lamson claimed that they were entitled to be paid the expense of said repairs, which the Eureka Marble Company at first declined to pay, but finally did pay ; that after said repairs were made, and in May, 1869, said machine was again put to use by the Eureka Marble Company in its said quarry, and continued in use until the time hereinafter mentioned ; that during all that time, and down to the time of filing the bill, the orators continued to be the owners of all the capital stock of the Eureka Marble Company, and alone interested in the property thereof, including said machine, and were interested solely by reason of being such stockholders, in all the business of said company, and in said contracts with the defendants, and in all damages which said company had suffered by reason of the breach of said contracts or such damages as said company was otherwise entitled to, and that all damages sustained by said company by reason of the breach of said contracts, or the use of said machine against the lawful rights of others, were to be borne and paid, in effect, by the orators as such stockholders, and that the covenants and agreements in the said contracts, were entered into by said defendants with the express understanding that they were to inure for the benefit of said corporation as aforesaid, and that therefore the orators had a right in equity to have and recover such damages as they had sustained by reason of the breach of said contracts by the defendants, or such damages as had arisen to said Eureka Marble Company by reason of having been deprived of the use of said machine on the ground that said company had no right to manufacture and sell the same ; that on or about the 11th

of May, 1868, the "Steam Stone Cutter Company," a corporation established under the laws of New York, brought a bill in equity against the said Windsor Manufacturing Company and the said Lamson, in the circuit court of the United States for the circuit within and for the district of Vermont, setting forth letters patent of "An Improved Stone-Cutting Machine," and alleging that the machine manufactured by the Windsor Manufacturing Company was an infringement thereof; that such proceedings were had in said suit, that at the October term of said court, 1870, a final judgment was rendered therein, establishing the validity of said letters patent, and deciding that said Windsor Manufacturing Company and said Lamson had infringed upon the same by the manufacture, sale, and use of said channelling machine, and that the defendants in said bill must account to the orators therein for all gains and profits made by them in such illegal manufacture, sale, and use, and pay said orators their costs and charges in said suit, and that an injunction issue according to the prayer of said bill against all the defendants therein named; that in October, 1870, the said Lamson applied to the officers of the Eureka Marble Company, and requested said company to discontinue the use of said machine, for the reason that they were thus enjoined, and that said company, in compliance with such request, being assured by said Lamson that he should in a short time arrange so that the orators could again resume the use of said machine, did discontinue the use of said machine at a pecuniary sacrifice of more than five thousand dollars; that no arrangement was made by which said machine was again put to use by the orators, and that about the 9th of December, 1870, said Steam Stone Cutter Company filed its bill of complaint against the Eureka Marble Company in said circuit court, alleging the same in substance as was alleged in the bill of the same orators against the said Lamson and the Windsor Manufacturing Company, and praying an accounting by the Eureka Marble Company for all gains and profits made by it by the use of said machine, and for the costs of suit, and also for a perpetual injunction against the use of said machine by these orators, or others in their behalf, and also for a preliminary injunction to continue during

the pendency of said suit; and that notice of application for said preliminary injunction having been given said Eureka Marble Company, it immediately notified said Lamson and the Windsor Manufacturing Company of the pendency of said last-named suit, and the application for said temporary injunction, and that on the 2nd of December, 1870, said Lamson and said Windsor Manufacturing Company assumed the defence of said suit, and said application for preliminary injunction; that thereafter these orators gave no personal attention to said suit, and that on the 12th of said December, an injunction was duly served upon the Eureka Marble Company, restraining it from using said channelling machine until further order of court; that said last named suit was still pending, and that all questions of the infringement of the rights of said Steam Stone Cutter Company, by the manufacture and use of said channelling machine, had been decided by the circuit court as aforesaid, and that said last named company claimed to recover of the Eureka Marble Company a large sum in damages, and the profits and gains arising to said company by reason of the illegal and unauthorized use of said machine, and the costs and expenses of said suit, which damages, profits, and costs, when recovered, the Eureka Marble Company would be compelled to pay; that after the service of said last named injunction, the orators had frequent consultations and negotiations with said Lamson and said Windsor Manufacturing Company, and stated to them their condition and the damages they had already sustained, and were from day to day sustaining, by reason of being deprived of the use of said machine, and urged said defendants to make some arrangements by which said machine could be used by the Eureka Marble Company, or to take back said machine, and refund to the orators the sum paid therefor, and for repairs thereof and the damages they had sustained by reason of being deprived of the use thereof as aforesaid, and to proceed with said suit against the Eureka Marble Company, and have an accounting to ascertain the amount of damages, profits, and costs said company might be compelled to pay therein, and to pay the same, and save said company harmless therefrom, and that the said

Lamson and the Windsor Manufacturing Company encouraged the orators that they would promptly, in one way or the other, comply with the orators' request, but had neglected so to do, and, claiming the right to manage the defence of said suit against the Eureka Marble Company, purposely neglected and refused to have the same proceeded with, to ascertain the liability of the Eureka Marble Company to said Steam Stone Cutter Company, or to take back said machine and refund the amount of money paid therefor and for the repairs thereof, or to pay to the orators the damages they had sustained by reason of being deprived of the use of said machine, or to make any arrangements by which the use of said machine could be resumed ; that said machine was worthless to the orators, and they entitled to return the same to the defendants, and had offered to do so, and were entitled to have and recover of the defendants the money paid for the same, and for the repairs thereof, with interest thereon, and were also entitled to have and recover of the defendants all reasonable sums to cover such damages as they had sustained by reason of the discontinuance of the use of said machine at the request of the defendants and in obedience to said injunction, and to all such damages and costs as might be recovered in said suit against the Eureka Marble Company.

*Prayer*, that an account be taken of the sum paid the defendants for said machine, and the costs of its transportation, and the sums paid for repairing the same, and the expenses incident thereto paid by the orators ; also, of all the damages to the business of the Eureka Marble Company by reason of the loss of the use of said machine during the time the same was being repaired, and during the time its use by said company was discontinued at the request of said defendants, and in obedience to said writ of injunction ; also, of the damages, profits, and costs the said Steam Stone Cutter Company might be entitled to by reason of its said suit against the Eureka Marble Company, and that all proper orders and references be made for that purpose, and that said defendants be decreed to pay all sums found due on such accounting, and the costs of suit, and for general relief.

The defendants demurred to the bill,

1. For that it was brought in the names and behalf of the said Eureka Marble Company and of the said several individual stockholders therein jointly, and that relief was prayed for in favor of said company and said stockholders jointly; whereas, upon the facts set forth in the bill, all the loss and injury complained of accrued, if at all, solely to said company in its corporate capacity, and in no wise to said individual stockholders, wherefore said stockholders were improperly joined as orators in said bill.

2. For that upon the facts in said bill stated and claimed to be true, a portion of the relief therein sought, as against both said defendants, namely, so much thereof as claims a recovery and damages for breach of that clause of the said second contract set forth in said bill which purports to provide that said Flint and other orators shall have the right to run the machine in said contract mentioned, must be recovered, if at all, from the said Lamson alone, the said Windsor Manufacturing Company being in no wise liable thereupon.

3. For that the claim to the residue of the relief in said bill sought, being for alleged breach of the further clause in the same agreement which provides an indemnity to said Flint and others against any damages and costs awarded against them by any legal courts, for infringement of any other patent-right, was without any legal or equitable foundation, inasmuch as upon all the facts in said bill stated, no breach of said clause in said agreement, or of any part thereof, has in any wise occurred.

4. For that said bill in respect to all the relief sought as aforesaid against said defendants, is multifarious, inasmuch as separate claims for recovering relief and damages, the one against said Lamson alone, and the other against said Lamson and said Windsor Manufacturing Company jointly, were joined in the same bill, and both claimed in favor of joint orators not jointly entitled thereto upon the facts as in said bill stated. ·

5. For that said bill was otherwise multifarious, defective, and insufficient in law for any recovery to be had thereon.

The court, at the September term, 1873, BARRETT, Chancellor, overruled the demurrer, *pro forma*, and by consent, for the purpose of an appeal, decreed that an account be taken of the sum paid said defendants for said channeling machine, and the cost of its transportation, and the sums paid for repairing the same, and the expenses incident thereto, paid by the Eureka Marble Company ; that an account be also taken of all the damages to the

business of said company by reason of the loss of the use of said machine during the time its use by said company was discontinued at the request of said defendants, and in obedience to said writ of injunction ; also, that an account be taken of the damages, profits, and costs the said Steam Stone Cutter Company were entitled to by reason of its said suit against the Eureka Marble Company, for the illegal and unauthorized use of said machine by said last named company ; that all the matters aforesaid be referred to a master to take such accountings ; and that on the coming in of such accounts, the said defendants pay to the Eureka Marble Company, all sums found due on such accounting ; from which decree the defendants appealed.

*L. M. Reed*, for the orators.

The defendants' solicitor seems to have assumed as matter of law, that all the orators, upon the facts set forth in a bill, must be entitled to the relief prayed for, and that jointly, or the bill is fatally defective. We do not so understand the law governing cases of this nature. The question of proper parties must depend upon the facts alleged in the bill, and is not affected by any special prayer for relief which may have been made. If the prayer for relief is defective, that, in itself, does not necessarily determine that there is also a defect in the parties to the bill. We insist that upon the facts and circumstances alleged in the bill, the law justifies the joinder of the orators as parties thereto. We assume that it is not necessary in all cases, that a person who is made a party to a bill, should have a beneficial interest in the subject-matter of the suit. Story Eq. Pl. §§ 72, 153 ; 1 Dan. Ch. Pr. 183. The individual orators were parties to the written contracts upon which such machine was delivered. They, and they alone, could sustain suits at law against the defendants for a breach of said contracts. They thus having the legal title to damages resulting from a breach of said contracts, and the right to sustain suits at law therefor, and the Eureka Marble Company having only an equitable interest which they can enforce, and by showing that said contracts were made by the individuals as its agents, or

for its benefit, these persons must be made parties, that the decree may bind them, and thereby render the defendants safe in its performance, and prevent their being molested by suits at law or otherwise. Mitf. Ch. Pl. 398 ; *Rogers* v. *Traders' Ins. Co.* 6 Paige, 594 : *Field* v. *Maghee,* 5 Paige, 539 ; *Dix et al.* v. *Briggs,* 9 Paige, 596. The rule, after all, is subject to the discretion of the court. It was made, and may be modified, to promote justice. Mitf. 398 ; *Elmandorf* v. *Taylor,* 10 Wheat. 152.

As to the second cause of demurrer, the contracts of Dec. 9, 1867, and April 1, 1868, relate to the same subject-matter, and were executed and delivered prior to the delivery of the machine. The former is referred to in express terms in the latter, and they should be taken together, and construed as one entire contract. If, however, the Windsor Manufacturing Company is not bound by the express terms of the contract that the " parties shall have a right to run said machine," &c., then, having sold said machine to said Flint and others for the purpose of its being used by them in their marble quarry, it is bound by an implied promise to that effect. Story Eq. Pl. §§ 271 a, 534. Lamson is a proper party : 1, on the ground of his liability under his contract, leaving him somewhat in the relation of surety for the defendant corporation ; 2, on the ground that he is an agent and officer of defendant corporation, cognizant of the facts ; and he may be made a defendant for the purpose of obtaining an answer on oath.

The third cause of demurrer alleged is, that it is apparent upon all the facts stated in the bill, that no damages or costs have been awarded by any legal courts for infringements, and hence, that there has been no breach of the agreement in that respect. The right of the defendants in this suit to manufacture and sell said channeling machine, having been conclusively settled by a court of competent jurisdiction as alleged in the bill, the only question remaining to be decided in the suit in favor of the Steam Stone Cutter Company against the Eureka Marble Company, is simply the amount of damages which the latter is bound to pay. The special prayer simply asks that an accounting may be had, and that sum determined, and that the defendants be decreed to pay,

&c. This is a part of the subject-matter contained in the contracts in controversy in this suit, and a decree should be had, " covering the whole subject-matter in controversy," making a " complete decree between the parties which shall bind them all," and thereby " taking away the necessity of a multiplicity of suits." But if the orators are not entitled to the relief asked for in the special prayer, it is no cause of demurrer, if they are entitled to any of the relief asked for.

The third cause of demurrer is, that we ask for some relief to which none of the orators are entitled either jointly or severally; and the fourth cause is, that even if we might otherwise be entitled to some of the relief asked, inasmuch as we asked in the specific prayer for joint relief, the bill is fatally defective under either or both of said objections. A careful examination of the specific prayer will satisfy the court, we think, that its construction will not justify the conclusion of fact upon which the fourth cause of demurrer is predicated, to wit, that the prayer is for joint relief. But suppose the prayer for special relief is defective in asking for some relief to which none of the orators are entitled, and asking for joint relief for all the orators when only a portion of them are entitled, the prayer for general relief is sufficient for all purposes sought by the bill. Story Eq. Pl. § 41 A defective prayer for special relief, in a bill containing a general prayer under which the relief to which the orator is entitled can be granted, does not render the bill demurrable. 1 Dan. Ch. Pr. 385; *Stone* v. *Anderson*, 26 N. H. 506; *Busby* v. *Littlefield*, 31 N. H. 193; *Tredwell* v. *Brown*, 44 N. H. 551; REDFIELD, J., in *Danforth* v. *Smith*, 23 Vt. 257.

The point that some of the complainants should not have been joined in the complaint, if objectionable, is amendable. *Dix et al.* v. *Blanchard*, 10 Paige, 464–5; Mitf. 399, n. 1.

*J. N. Edminster* and *E. J. Phelps*, for the defendants.

Upon the facts stated in the bill, the Eureka Marble Company has a clear and complete remedy at law; and this bill, therefore, cannot be sustained. Although this ground of demurrer was not specially stated, it is available on the hearing. A defendant de-

murring to a bill for causes assigned, can add other causes at the hearing *ore tenus*. 1 Dan. Ch. Pr. 614.

For so much of the relief prayed for in the bill as seeks a decree for the damages likely to be hereafter recovered of the Eureka Marble Company by the Steam Stone Cutter Company, no action can be maintained either at law or in equity. And as to that part of the bill the demurrer should be allowed, even if the remainder is sustained. The contract contains a provision for indemnity against these damages. But the agreement on this point is not violated, until such damages are actually sustained. No action can be maintained for a prospective violation ; nor could any measure of recovery in such an action be found.

There is a misjoinder of plaintiffs that is fatal to the bill. The individual orators have no interest in any of the causes of action that enables them to sue. The right of action, upon the facts stated, is in the corporation orator solely. And there is no joint right of action whatever. The contract of April 1, 1868, was plainly intended as a substitute for that of December 9, 1867. But whether this is so or not, the result on this point is the same. Both were for the exclusive use and benefit of the corporation. It was to the corporation alone that the damages now claimed accrued. Even at law, therefore, but much more in equity, the corporation can sue. It is only as stockholders in the corporation, that the individual orators have any interest in the transaction, and that is not an interest that entitles them to sue, or to join in a suit in behalf of the corporation. It is an indirect interest, and one constantly changing and fluctuating with the transfer of the stock. Stockholders in a corporation can only act through the corporation in its corporate capacity. They cannot sue upon its causes of action. Hence, it is well settled, that before stockholders in their individual capacity can have any standing in court upon rights of the corporation, it must appear, *first*, that the corporation refuses to enforce such rights, and *second*, that the omission to do so is such as to amount to a breach of trust in the officers. *Dodge* v. *Wolsey*, 18 How. 381 ; *Heath* v. *Erie Railway*, 8 Blatchf. 247. This objection is fatal to the suit. *Mayor and Aldermen of Colchester* v. ———, P. Wms. 595 ; *Troughton* v.

*Gettey*, 1 Dick. 382 ; *King of Spain* v. *Machado*, 4 Russ. 228 ; *Cuff* v. *Platell*, Ib. 242 ; *Makeprice* v. *Haythorn*, Ib. 244 ; *Paye* v. *Townshend*, 5 Sim. 395 ; *Bill* v. *Cureton*, 2 Myl. & K. 503 ; *Clarkson* v. *De Peyster*, 3 Paige, 336 ; 1 Dan. Ch. Pr. 248, 302, 303, 348, 362 ; Story Eq. Pl. §§ 231, 232, 509, 510.

The bill is multifarious from a misjoinder of causes of action. It prays for a refunding of the money paid for the machine, and its repairs, and for the damages sustained by the Eureka Marble Company in consequence of interruption in its use. This claim is against the defendant Lamson alone. The purchase was made from him, and the price paid to him ; and he alone guarantees in the written contract the right to use the machine. The bill further claims that the damages to be recovered by the Steam Stone Cutter Company of the Eureka Marble Company, be ascertained, and decreed to be paid to the latter company by the defendants. This claim, if sustained, is against the Windsor Manufacturing Company and the defendant Lamson jointly, neither being separately liable upon it. It arises under the written contract of April 1, 1868—there is no provision for it in that of Dec. 9, 1867—and is the joint indemnity of the two defendants. That these rights of action arise out of the same general transaction, and under different clauses of the same agreement, is not enough to save the bill from being multifarious. Story Eq. Pl. § 30 ; 1 Dan. Ch. Pr. 343–352 ; *Harrison* v. *Hogg*, 2 Vesey, Jr. 323 ; *Boyd* v. *Hoyt*, 5 Paige, 65 ; *Swift* v. *Eckford*, 6 Paige, 22. As resulting from the misjoinder of the causes of action, the bill is also demurrable as praying for relief against the Windsor Manufacturing Company that, upon the facts stated in the bill, the orators are not entitled to. The bill does not show a cause of action existing in the orators. All the statements in the bill as to what was intended and understood at the time of making the contracts, are wholly inadmissible. The orators cannot go outside of their contract, to show what was intended, nor to show that they acted as agents in taking it, nor that it was for the benefit of some other parties than those who appear on the face of the contract itself. *Jackson* v. *Hart*, 12 Johns. 77 ; *Jackson* v. *Foster*, Ib. 488 ; *Dance* v. *Girdler*, 1 N. R. 34 ; *Newcomb* v. *Clark*, 1 Denio, 226 ; *Spencer*

v. *Field*, 10 Wend. 88; Story Part. § 250; Dunlap's Paley Agency, 70, n; *Worthington* v. *Savage Manf'g Co.* 1 Gill, 284. The defendants are not liable upon the covenants in the second contract, in any view, for the damages suffered by the Eureka Marble Company. There is no privity of contract between the parties to this suit. A corporation can have no more rights in contracts or promises made with its stockholders individually, than if made with any third persons not stockholders. *Dance* v. *Girdler*, *supra; Leffingwell* v. *Elliot*, 8 Pick. 455.

An accounting is sought. To this the orators are not, in any view of the case, entitled. The items of the account are, the claim upon the two alleged broken covenants in the contract; the claim for a return of the purchase money paid for the machine; and the amount paid for the repairing of the machine during its use by the Eureka Marble Company. Whatever rights the orators may have relative to these matters, they are not subjects of equity jurisdiction. We are met in the first instance with one objection that is insuperable. The parties are not all interested in all the items of the account; they should be, to sustain the bill. Courts of equity have jurisdiction in matters of account growing out of privity of contract: 1. Where there are mutual accounts. Here the items are all on one side. 2. Where the accounts are complicated and intricate. There are but four items in this account. 3. Where the accounts are all on one side, and some relief that is peculiarly within the jurisdiction of a court of equity, is necessary in aid of the accounting; as discovery. Here all the items are on one side, and no discovery, or other relief in aid of the accounting, is sought. Equity has no jurisdiction of such a case. 1 Story Eq. Jur. §§ 458, 459; *Pearll* v. *Nashville*, 10 Yerg. (Tenn.) 179; *Foley* v. *Hill*, 1 Phillips, 399; 1 Daniels Ch. Pr. 610, notes. 4. Where the taking of an account of several estates is necessary. 5. Where multiplicity of suits renders the trial difficult, expensive, and unsatisfactory at law. The orators must rest their claim to return the machine and recover back the price, either upon the ground that it was unlawful for the defendants to manufacture and sell the machine, or that there has been a failure of title or consideration; neither of which is true. The

rules of law relative to failure of title, and failure of considera-
tion, are not applicable to cases like the present.   With respect
to the item claimed for sums paid out for repairs upon the ma-
chine, it is submitted that the orators cannot recover that back
now.   The repairs were done at their request, and were paid for
voluntarily by them.   There is, then, but one item in the account
upon which a recovery can be claimed in any court; that is upon
the separate promise of the defendant Lamson.

The opinion of the court was delivered by

REDFIELD, J.   Certain persons, becoming owners of a marble
quarry in Rutland, proposed to form themselves into a corporation
under the statute, to work the quarry.   Before any corporation
was formed, on the 9th December, 1867, three of such owners
contracted with the Windsor Manufacturing Company to purchase
a stone channeling machine, at the agreed price of $6000.   In
this contract, said company agrees " to defend the patent-right, in
case any litigation is commenced, and to save them harmless from
loss, in case any damages are sustained by means of infringements
of other patents."   This contract is signed by the three own-
ers of the quarry and by " E. G. Lamson, Pres't."   The bill
alleges that the purchase was made in the interest, and in be-
half, of all the said owners of the quarry, and for the corpo-
ration then about to be formed, which was to receive the ma-
chine and pay for it.   Such owners of the quarry formed an
association under their hands and seals, on the 20th February,
1868.   Before any stock was issued or further orgaization into a
corporation, on the 1st of April, 1868, another contract, reciting
that such owners of the quarry (naming all except Bennett),
" have this day bought of E. G. Lamson, owner of stone channel-
ing machine, one of said machines."   In this contract, Lamson
and the company agree to defend the patent-right, and save them
harmless, &c.   The bill avers that both contracts were made in
behalf, and inured to the benefit, of the corporation which was in-
tended to, and soon after did, work the quarry.   The owners
organized under a special charter granted by the legislature in
1867, the name of which was changed to Eureka Marble Company

by the legislature in 1868. This corporation received and paid for the machine. The bill further alleges, that at the October session of the circuit court of the United States for this district, at the suit of the " Steam Stone Cutter Company," a decision was had enjoining said Lamson and the Windsor Manufacturing Company, and forbidding the manufacture or sale of such machines, as an infringement of the right of said Steam Stone Cutter Company ; and a master was appointed to take an account of the profits, &c., and the orator corporation was also enjoined at the suit of the same company.

The defendants demur to the bill, and for causes state *first*, that the several stockholders are improperly joined with the corporation ; whereas the injury, if any, has accrued to the corporation alone. The stockholders in a corporation, as a general rule, can act only through the corporation ; and all causes of action are to be prosecuted in the name of the corporation. Hence, stockholders cannot, ordinarily, be properly made parties, but the suit should be in the name of the corporation alone. And when *improper* parties are joined as orators, the objection may well be taken by demurrer. There are exceptional cases where the stockholders, or even a minority of them, may bring a bill against the corporation and others confederating with its officers in some wrong. 2 Story Eq. Jur. § 1252. But the defendants in this case contracted with, and made covenants to, certain persons interested in the quarry, who merged their interest in the corporation afterwards created, in which they became shareholders. Lamson and the Windsor Manufacturing Company covenanted, under seal, to them, " to defend the patent-right, and save them harmless from loss," &c. They alone, at law, could sue upon that contract. The machine being delivered to and paid for by the corporation, thus fulfilling the contract that these owners had entered into, and with their consent, the corporation become the owners of the machine, and, beneficially, the assignee of the contract. In such cases, the assignor is a proper, and often a *necessary*, party. " In cases, therefore, where an assignment does not pass the legal title, but only the equitable title, to the property, it is usual, if not indispensable, to make the assignor holding the legal title, a

party to the suit." Story Eq. Pl. § 153. "If a bond or judgment be assigned, the assignor, as well as the assignee, must be a party." Mitf. Pl. 179. The averment in the bill, "that said machine was bought for the use, and was to become the property, of said association," and that "said Lamson and the Windsor Manufacturing Company well understood that the covenants contained in said contracts were to inure to the benefit of the corporation thereafter to be organized," and that said machine was taken and put to use and paid for by the corporation, would, if true, make the corporation the owner of the machine, and, beneficially, the owner of the contracts, with the right, at law, to enforce the covenants therein of the defendants. The parties to such contracts, although the whole equitable ownership has become vested in the corporation, we think, may properly be joined as orators with the corporation.

The 2d, 3d, 4th, and 5th special causes of demurrer, are based upon the incongruity and impropriety of joining the two defendants   The contract of December 9, 1867, purports to order a machine of the Windsor Manufacturing Company, of a specified kind and price, to be delivered at Windsor, by the 1st of April, 1868; $1000 to be paid on delivery, the residue by note on time. The company agree to "defend the patent-right, and save *them* harmless from loss," &c. The bill alleges that the machine was constructed, and ready for delivery on the day named in the contract; and on that day, April 1st, 1868, for further assurance, *all* the owners of the quarry, except Bennett, took a further guaranty under seal, signed by Lamson and Windsor Manufacturing Company by E. G. Lamson, Pres't, reciting that "W. & J. G. Flint," (and seven others named) "have this day bought of E. G. Lamson, owner of stone channeling machine, one of said machines, built by the Windsor Manufacturing Company, in *accordance with the contract* made and signed December 9th, 1867; and the said E. G. Lamson has received $6000 in payment for said machine No. 6." The writing further recites, that Lamson, "on his part, in said sale, agrees that the parties shall have the right to run said machine, and in case of any litigation, * * * said Lamson and the company agree to defend and save harmless," &c. And the

company agrees to furnish repairs, &c. The two contracts constitute a singular piece of mosaic, with some joint and some several covenants of each party ; both executed on the part of the company, by E. G. Lamson, President. The bill avers that Lamson represented that he was the original inventor of the machine, and that the *company* of which he was agent and president, was manufacturing them for sale. It is not to be presumed that these contracts were purposely drawn in a manner so involved as to puzzle any pleader in adapting process to their enforcement ; but rather that Lamson, being owner of the patent, and being president and principal in ownership and management of the company, acted, generally, for and in behalf of the company in selling its machines, and that he sold this machine for the company ; and in the last contract, he added his personal guaranty that he would *defend the patent*. The stipulation in the last contract, by Lamson, that such purchasers " should have the right to run the same machine," is in the same sentence with the principal guaranty where both Lamson and the company are guarantors, and is merely a repetition of what is always implied by the sale. There is ever an implied warranty of title in a sale. And a *title* implies a right to *use*. The principal may maintain an action in his own name, often, on a contract made in the name of the agent, and may become responsible for contracts of an agent made in his own name. The stipulations of Lamson and the company, are so intertwined, and overlaid each other, that the orator might, with plausibility, sustain equity jurisdiction, on the ground of avoiding multiplicity of suits. But there are many cases where defendants have not a co-extensive common interest or relation, and are properly joined as defendants. " It is not indispensable that all the parties should have an interest in all the matters contained in the suit ; it will be sufficient if each party has an interest in *some matters* in the suit, and they are connected with the others." Story Eq. Pl. § 271 a.

The third cause of demurrer, that there has been no cost or damages awarded for infringement of the patent, and hence no

breach of the contract to defend such suits and indemnify the parties against loss, is no sufficient ground of demurrer to the whole bill. If the joint relief sought in the special prayer cannot be awarded in the form asked, if the orators are entitled to relief upon the grounds alleged, the general prayer is sufficient to enable the court to award relief adapted to the case; for that has been held by the greatest chancellors to be a most "effectual prayer," when the case established a right to relief. The bill alleges that this Lamson machine has been adjudged an infringement of another's right to the patent, by the circuit court of the United States; asks that the defendants account for all gains; and that an injunction issue, &c. It is also alleged that the same party has procured an injunction against the orator corporation, based on the same allegations as against these defendants. But no damages have been assessed or paid. And *non constat* that the orators will not be protected from all loss or damages by reason of any infringement of the patent; or that the defendants may not, ultimately, vindicate their right to the patent. The orators saw fit in the purchase of the machine, to take covenants of indemnity "to defend the patent-right and save them harmless from loss, in case any damages are awarded by any legal courts for infringements on other patents, and legal costs; and step in and defend the suits." There is no allegation that these covenants have been broken. We think the last contract is not a substitute for the other, but rather in addition to it, and that Lamson, being the owner of the patent, joined in the sale; and in the contract of the first of April, he named himself as the vendor, and personally covenanted as to title, as the company, impliedly, had done in the contract of the 9th December, and that both defendants should be held as guarantors of title.

The decree of the court of chancery is reversed, and cause remanded, with directions to refer the same to a master to take and state the account of all necessary damage to the orators, by reason of the loss of the use of said machine during the time its use was suspended at the request of the defendants, or in obedience to said writ of injunction; and make decree for the orators for the

same. The defendants have leave to withdraw the demurrer and replead, by paying costs, and taking none during the pendency of the demurrer.