JAMES D. BELL'S ADM'R. ET AL. *v.* ST. JOHNSBURY AND LAKE

CHAMPLAIN RAILROAD COMPANY.

May Term, 1909.

PRESENT: ROWELL, C. J., MUNSON, AND WATSON, JJ., AND HALL AND STANTON, SUPERIOR JUDGES.

Opinion filed November 13, 1911.

*Equity—Decree—Erroneous Statement—Prejudice— Bill—General Prayer for Relief—Efficiency—Railroads—Receivers—Net Earnings—Application to Preferred Claims—Application to Permanent Improvements—Effect—Right of Claimants to Follow—Lis Pendens—Purchasers of Bonds—Pendente Lite.*

An erroneous statement in a decree in a suit to impose a lien on the earnings of a railroad, made only by way of recital in a statement of the history

of the case, that the suit had been consolidated with a prior suit to foreclose a mortgage securing certain bonds, was harmless.

In a chancery suit to impose a lien on the earnings of a railroad while in a receiver's hands for the payment of preferred claims for services rendered and materials furnished in the operation of the railroad before the receivership, the prayer of the amended bill, which included a general prayer for relief, and the allegation of the supplemental bill, considered, and *held* that, as the general prayer for relief is sufficient to obtain all relief consistent with the general frame of the bill, the bill and its general prayer is sufficient to sustain a decree following into the hands of defendant, which was organized by the mortgage bondholders after foreclosure to succeed to the property, the net earnings of the railroad while in the receiver's hands, and compelling defendant to apply those earnings in payment of orators' claims.

Where the receivers of a railroad applied the net earnings thereof to permanently improving the property, instead of in payment of preferred claims for services rendered and materials furnished in the operation of the railroad before the receivership, whereby that application inured to the benefit of mortgage bondholders, who, after foreclosure, organized defendant corporation to succeed to the ownership of the property, defendant itself became liable for the payment of such preferred claims.

Where railroad mortgage bondholders, having foreclosed their mortgage, organized defendant corporation to take over the property, which it did, and issued bonds secured by mortgage thereon, and the transfer was accomplished, and the bonds issued, after suit brought by orators to impose a lien on the earnings of the railroad while in receivers' hands, for the payment of preferred claims for services rendered and materials furnished in the operation of the railroad before the receivership, defendant's bondholders were purchasers *pendente lite*, and are bound by the final result of orators' litigation.

APPEAL IN CHANCERY.  Heard on the pleadings and masters' report at the December Term, 1907, Caledonia County, *Waterman*, Chancellor.  Decree for the orators.  The defendant appealed.  The two cases cited in the first paragraph of the opinion must be read in order fully to understand this case.

*George W. Wing* for the orators.

If the mortgagees had any priority to the income during the pendency of the proceedings in the Poland case, it must be determined by the provisions of the mortgage. Those provisions give them no lien or priority of claim upon income,

superior to the orator's but, on the contrary, such lien or priority is subordinate to the rights of the orators. *Poland* v. *Railroad Co.*, 52 Vt. 144; *Ellis* v. *Boston etc. Co.*, 107 Mass. 1; *Douglass* v. *Cline*, 12 Bush. 608; *Duncan* v. *Ches. etc. Co.*, 15 Am. Law Reg. (N. S.) 428. In *Farmers Loan etc. Co.* v. *Northern Pacific R. R. Co.*, 74 Fed. 431, it is held that certain classes of debts of railroads, incurred before the road went into receivership have been held by the courts to be entitled to payment in preference to prior mortgage liens upon two distinct grounds. First that the court has discretionary power to order payment as a condition precedent to assuming control of the property at request of the lien-holder. Second, that certain debts contracted prior to appointment of the receiver, are payable by him out of the income, for the reason that they are known as preferential. Such allowance and payment does not depend upon the authority of an order made at the inception of the receivership, but upon their inherently equitable nature, arising from the fact that they represent     *   *   *     wages due its operatives, whose assistance was indispensable to its maintenance as a going concern; *Blair* v. *St. Louis etc. Ry. Co.*, 22 Fed. 769; *Sage* v. *Memphis etc., R. R. Co.*, 25 U. S. 361; *Miltenberger* v. *R. R. Co.*, 106 U. S. 117; *Union Trust Co.* v. *Souther and Bro.*, 107 U. S. 488; *Union Trust Co.* v. *Illinois etc. R. R. Co.*, 117 U. S. 434; *Hale* v. *Frost*, 99 U. S. 389; *Burnham* v. *Bowen*, 111 U. S. 777; *Williamson* v. *Washington City etc. R. R. Co.*, 33 Gratt. 624; *Skiddy* v. *Atlantic etc. R. R. Co.*, 3 Hughes 320; *Wood* v. *N. Y. etc. Co.*, 70 Fed. 741.

When a railroad is in the hands of a receiver, and there has been a diversion of current income from the payment of current or preferred debts to the payment of interest on a mortgage, or in making permanent improvements, there should be a restoration to the extent of such diversion, it being in derogation of the rights of those entitled to the fund; and if such restoration cannot be made from the income, the court should order the amount necessary to be charged upon the *corpus* of the mortgaged property, and to be restored from the proceeds of its sale. *Union Trust Co.* v. *Morrison*, 125 U. S. 591; *Fosdick* v. *Schall*, 99 U. S. 25; *Ames* v. *Union Pac. R. R. Co.*, 74 Fed. 335; *Finance Co.* v. *Charleston etc. R. R. Co.*, 52 Fed. 524; *Calhoun* v. *St. Louis*

*etc. Co.,* 14 Fed. 9; *Houston etc. Co.* v. *Crawford,* 53 Am. St. 752; *Texas Pac. Ry. Co.* v. *Johnson,* 18 Am. St. Rep. 60; *McIlhenny* v. *Binz,* 26 Am. St. Rep. 705; *Jones* v. *Central Trust Co.,* 73 Fed. 568; *Ellis* v. *Vernon Ice etc. Co.,* 86 Tex. 109; *Clark* v. *Central R. R. Co.,* 66 Fed. 803; *Virg. etc. Co.* v. *Cent. Ry. Co.,* 170 U. S. 356; *Green* v. *Coast Line R. R. Co.,* 54 Am. St. Rep. 430; *Farmers etc. Co.* v. *Kans. City etc. R. R. Co.,* 53 Fed. 189; *Southern Co.* v. *Carnegie etc.,* 76 Fed. 499; *Williams* v. *Virg. etc. R. R. Co.,* 33 Gratt. 628; *N. Y. Indemnity Co.* v. *Tacoma etc. R. R. Co.,* 83 Fed. 367.

*Young & Young* for the defendant.

Ordinarily the court of chancery has no power to create a lien in favor of unsecured creditors and make that lien prior to the rights of mortgagees of real estate of a railroad company, nor to pay the unsecured creditors out of the proceeds of the sale of the real estate. *Farmers Loan & Trust Co.* v. *Northern Pac. R. Co.,* 68 Fed. 36; *Kneeland* v. *American etc. Co. et al.,* 136 U. S. 89, (34 L. ed. 379); *Penn.* v. *Calhoun,* 121 U. S. 251; *Thomas et al.* v. *Western Car Co.,* 149 U. S. 95.

The current expenses that may be preferred to the mortgage lien are such only as have accrued within a short time and not exceeding six months prior to the receivership. *Blair* v. *St. Louis etc. Co.,* 22 Fed. 471; *Southern Railway Co.* v. *Carnegie Steel Co.,* 176 U. S. 257; *Union Trust Co.* v. *Souther et al.,* 107 U. S. 591.

The court of chancery in the decree appealed from had no power to decree that the indebtedness found due the orators in this cause shall be a lien upon the real estate of this defendant *Toledo etc. R. R. Co. et al.* v. *Hamilton,* 134 U. S. 296; *Porter* v. *Steel Company,* 120 U. S. 649, 30 L. ed. 830, 122 U. S. 267, 30 L. ed. 1210; *Galveston R. R. Co.* v. *Cowdrey,* 11 Wall. 459, 20 L. ed. 199; *Dillon* v. *Barbard,* 88 U. S. 430, 22 L. ed. 673 *Thompson* v. *White Water Valley R. R. Co.,* 132 U. S. 68, 33 L. ed. 256; *Pennock* v. *Coe,* 64 U. S. 130, 16 L. ed. 441; *Field* v. *Mayor,* 6 N. Y. 179; *Seymour* v. *Canandaigua etc. R. Co.,* 25 Barb. 286; Redfield on Railways, 578; *Langton* v. *Horton,* 1 Hare 549; *Re Howe,* 1 Paige 129; *Mitchell* v. *Windslow,* 2 Story C. C. 644; Domat, 649, art. 5.

STANTON, Superior Judge. The orators are preferred creditors and their original bill under the provisions of Sec. 102, of Chapter 28, of the General Statutes, was brought to recover for services rendered and material furnished to keep the railroad now owned by the defendant in repair, and to run the same, before and at the time it went into the hands of receivers on October 18, 1877.

In the opinion handed down when this case was before the Court in 1902, 76 Vt. 42, and in the case of *Poland* v. *The Lamoille Valley R. R. Co. et al.*, 52 Vt. 144, referred to herein as the Poland case, there is a complete history of all matters connected with this litigation and the issues and questions involved, a repetition of which is unnecessary.

In accord with the opinion of the Court in 76 Vt. 42, a mandate was sent down directing that a proper decree be entered for the orators, save the one whose claim the Court had disallowed, with costs.

A decree was entered by the court of chancery, May 6, 1908, and it was therein adjudged and decreed that the debts of the orators were and are, and until paid shall continue to be, a first and paramount lien upon the net earnings of the railroads while operated by the receivers; that the defendant pay to the clerk of the court for the benefit of the orators on or before July 1, 1908, the sum of $28,986.60 with interest thereon from the 3rd day of December, 1907, being the aggregate amount due the several orators with interest to the last named date, and the costs of the orators, taxed and allowed at the sum of $596.93; that in default of said debts, claims and costs being paid by July 1, 1908, the lien upon the said net earnings of the defendant shall continue until full payment is accomplished, and that the cause shall be kept upon the docket of the court of chancery until said claims are fully paid, with leave to the orators to apply to the court for all necessary and needful orders to effectuate the payment of their several claims.

The case is now here on an appeal by the defendant from this decree of the court of chancery relative to the form and extent of the decree, and the first claim made is that the case is not consolidated with nor is supplementary to the Poland case.

In this the defendant is correct, and it is obvious that it

was an error to state as was stated in the decretal order of 1902, that this case is supplementary to and is consolidated with the Poland case, but the error was perfectly harmless and could not in any degree have influenced the Court in its holdings in the case as reported in the 76th Vt. No attempt has been made to show that it did, or that defendants have been harmed by it, and what is said about it in the decree here appealed from, is only by way of a recital of the decretal order of June, 1902, in the statement of the history of the case, and is not a part of the adjudication in the decree.

It is asserted by the defendant that the orators' bill does not ask for a lien on defendant's real estate nor on the net earnings that accumulated while defendant's railroads were in the hands of the receivers.

The orators' amended bill filed June 5, 1880, contains a prayer that the court will order and decree that the debts due the orators are a lien on the earnings of the roads in the receivers' hands; that the bondholders should be restrained from taking possession of the roads or appropriating or diverting any of the net earnings from the payment of the orators' claims until they should be paid in full and concludes with a general prayer for relief. In orators' supplemental bill filed December 7, 1880, after stating that orators were not permitted by the Court to intervene in the Poland case, but were allowed to enter their suit as an original action, it is alleged that by foreclosure of the mortgages the defendant was substituted for the original mortgagors, and that then it was its duty to pay the preferred debts of the orators; that the personal property of the railroads, when they went into the hands of the receivers and the earnings of the roads while they were operated by the receivers were more than sufficient to pay all the debts of the roads that were a lien on such property and earnings; that it was the duty of the receivers to have paid all the income of the roads in discharge of such claims as were by the statute given preference, and that as the defendant had taken the road with its improvements they should pay to the lien creditors the amount of the fund illegally converted to their use by the receivers to the amount due the orators on their preferred claims in this suit. The foregoing is in substance the general frame of the orators' bill

and the "general prayer for relief is sufficient to obtain all relief consistent with the general frame of the bill." Therefore all the relief which is adapted to the case may be granted under this bill and its general prayer for relief, and it is sufficient to uphold this decree and allow equity to follow the net earnings and lay hold of them to enforce their application to the payment of the orators' claims. *Danforth* v. *Smith*, 23 Vt. 247; *Eureka Mfg. Co.* v. *Windsor Mfg. Co.*, 47 Vt. 430; *Coffrin* v. *Cole*, 67 Vt. 226, 31 Atl. 313; *Western Union Tel. Co.* v. *Bullard*, 67 Vt. 272, 31 Atl. 286.

In the recital of facts upon which the adjudication in the decree is based it is stated concerning the masters' report as follows: "That said masters ascertained and reported that the net earnings of the receivership made during its continuance, and subject to the lien of the orators according to the mandate of the Supreme Court in this cause, on the first day of July A. D. 1880, were $39,496.78, subject to such deductions as the Court should adjudge ought to be made therefrom on the facts found and reported by them." The defendant submits that the words "and subject to the lien of the orators according to the mandate of the Supreme Court in this cause" should be eliminated from the paragraph for that the mandate of 1885 did not authorize that matter to be referred to the masters, and that the finding is entirely outside their powers and of no avail to the orators. But the statement is immaterial and harmless. To quote it in the decree has not the slightest tendency to injure the defendant nor to influence the adjudication in the decree.

The statements in the decree that the several debts of the orators named in the masters' report should continue to be a first and paramount lien upon the net earnings of the railroads, while they were operated by the receivers, on so much thereof as may be necessary to pay the debts of the orators, and if the net earnings are not sufficient to pay the debts in full with costs of this suit then it should be applied *pro rata* to such payment, is in accord with the law of the case and is a relief to which the orators are entitled as it is consistent with the form of the orators' bill and the power of a court of equity.

The masters' report is full authority for the assertion in the decree that "The receivers expended all their income in

running and improving the road except the sum of $6,922.18 of cash on hand and due from agents which was turned over to defendant,'' and therefore the defendant's objections to the statement of facts as to the disposition of the net earnings is not well founded.

The defendant's special objections numbered six to eleven inclusive are answered by the facts found by the masters and the law of the case, and in considering these objections and with especial reference to the last four we hold that the decree conforms to the mandate, and that there is no clause in the decree that is vital to its existence but is warranted by the established facts in the case and the holdings of the Court.

It is urged by the defendant in its objections to the chancellor's decree that before any decree is made creating a lien on its real estate the present bondholders or mortgagees should be cited in and heard. These bondholders took their holdings after the final decree in the Poland case and the taking over of the property by the defendant. They took their securities with the knowledge that orators' case was pending and the claim that was thereby made. They are not entitled to notice and hearing now, for their interest is subject to the case that was pending when they came to have an interest in the property. They secured their holdings after the bill in this case was brought, and while this litigation was pending. The maxim *"pendente lite nihil innovetur"* applies, and there has been no change so far as these orators' rights are concerned and they stand as they stood when their original bill was filed.

As the right of the orators to maintain this bill to reach the net earnings has been heretofore adjudged and determined in this very case, the only question now open for consideration is whether the decree appealed from is according to the mandate sent down when the case was last here, 76 Vt. 42, 56 Atl. 105. That mandate was that a "proper" decree be entered for the orators, without stating what would be a proper decree.

In addition to what has already been said as to what is contained in the decree it, in effect, besides ordering that the debts of the orators are a lien on the net earnings, adjudges and decrees that as those earnings were used by the receivers in making permanent improvements on the roads or were passed over to

the defendant when it took possession of the roads, whereby it took and had the benefit of said net earnings in the improved condition of the property and in the cash and accounts and other personal property passed over to it—the defendant must restore said net earnings, or so much thereof as is necessary to pay the orators at the time named in the decree, in default of which the lien on the net earnings is to continue until payment is made.

The decree is proper and adequate in all respects except that it should have charged the defendant first with the sum of $6,922.18 the cash and agents' accounts that were turned over to it by the receivers, it being the amount remaining of the net earnings of the receivership, after deducting the sum paid out of the same for running and improving the roads; and second the decree should have charged the mortgage security with the restoration of so much of the net earnings as is needed to complete the payment of orators' claim in full, out of the fund that was diverted from the payment of said claims and devoted to the expense of improving and running the road, and thus improving the mortgage security, for that fund is chargeable therewith in equity.

This has often been held by the Supreme Court of the United States, as is shown by *Southern Railway Co.* v. *Carnegie Steel Co.*, 176 U. S. 257, 285, 20 Sup. Ct. 347, 358, 44 L. ed. 458, which reviews the former decisions of that Court, and states the law to be that, "when current earnings are used for the benefit of mortgage creditors before current expenses are paid, the mortgage security is chargeable in euqity with the restoration of any funds thus improperly diverted from their primary use."

This case comes fully within that principle, for the defendant was organized in the interest of the bondholders that were secured by the Poland mortgage, and in that interest took possession of the mortgaged property under the decree of foreclosure, and is still in possession, management and control thereof for all purposes of this case.

The amount of net earnings under the receivership as established by the Court, was $35,563.50 and of this $28,641.32 was used by the receivers in running and improving the road, and thereby enhanced the mortgage security, and the balance

·of $6,922.18 was paid directly to the defendant in cash and agents' accounts.

*Cause remanded with direction that the decree be so altered as to charge the defendant with the payment to orators of the amount of cash and agents' accounts that were turned over to it at the time it took possession of the road at the termination of the receivership, and that the decree be further altered so as to charge the property that constituted the mortgage security with the restoration· of so much of the net earnings as is needed to complete full payment of orators' aggregate claims with interest thereon. In all other respects the decreed is affirmed. Let new time of payment be fixed.*