### UNITED STATES *v.* KANSAS PACIFIC RAILWAY COMPANY.

1. The bonds granted by the United States to the Kansas Pacific Railway Company are not a lien on, nor is the company liable for five per cent of the net earnings of, that portion of its road west of the one hundredth meridian.

2. The court adheres to the rulings in *Union Pacific Railroad Company* v. *United States (supra,* p. 402), as to the principle which should govern in determining the amount of net earnings.   In regard to certain items claimed by the company as proper deductions from the gross receipts of the road, the following should be excluded, — money needed to place it in proper repair, but not actually expended for that purpose; the expenses of the land department; the interest on the funded debt, which has priority over the lien of the United States; and the fifty per cent retained by the latter from the amount due for services rendered to it: and that the following items should be allowed, provided they were actually paid out of the earnings of the road, and not raised by bonds or stock, — the equipment account, or replacing and rebuilding rolling-stock, machinery, &c.; the amounts paid for depot grounds, and the expenses of same; and the construction account, or improvements and additions to the track, &c.

ERROR to the Circuit Court of the United States for the District of Kansas.

The facts are stated in the opinion of the court.

*The Attorney-General* and *Mr. Joseph K. McCammon* for the plaintiff in error.

*Mr. John P. Usher* and *Mr. S. W. Sanderson, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

This case was a suit brought in the court below by the United States against the Kansas Pacific Railway Company, to recover five per cent of the net earnings of the road belonging to that company from the time of the completion thereof alleged to be the second day of November, 1869, to the thirty-first day of October, 1874; the said five per cent being claimed under the last clause of sect. 6 of the Pacific Railroad Act, passed July 1, 1862, which has already received consideration in the cases of the Union Pacific and the Central Pacific Railroad Companies, *supra*, p. 402, p. 449. The cause was tried by the court, the facts were specially found, and the conclusion arrived at that nothing was due to the government upon the alleged claim; and judgment was rendered for the defendant.

The Kansas Pacific Railway Company was originally chartered in 1855, by the Territory of Kansas, under the name of the Leavenworth, Pawnee, and Western Railroad Company, mentioned in the ninth section of the act of 1862, and afterwards, in 1863, received the name of the Union Pacific Railway Company, Eastern Division, and finally, in 1869, that which it now bears. By the section referred to, it was authorized to construct a railroad and telegraph line from the Missouri River, at the mouth of the Kansas River, so as to connect with the Union Pacific at the initial point on the one hundredth meridian, "upon the same terms and conditions in all respects as are provided in this act for the construction of the railroad and telegraph line first mentioned" (that is, the Union Pacific).

The company accepted the terms of the act, and proceeded to construct its road, receiving subsidy bonds therefor at the rate of $16,000 per mile for the whole length of its road to the one hundredth meridian, being $393\frac{15}{16}$ miles; all of which bonds were delivered as the work progressed. The road was completed to Sheridan, 405 miles west from the Missouri State line (the point of commencement), on the second day of

November, 1869, which is the date at which the government alleges that the road was completed.  The authority of the company to extend its road west of the one hundredth meridian was derived from the ninth section of the act of 1864, which declared as follows : —

"*And provided further*, that any company authorized by this act to construct its road and telegraph line from the Missouri River to the initial point aforesaid, may construct its road and telegraph line so as to connect with the Union Pacific Railroad at any point westwardly of such initial point, in case such company shall deem such westward connection more practicable or desirable ; and in aid of the construction of so much of its road and telegraph line as shall be a departure from the route hereinbefore provided for its road, such company shall be entitled to all the benefits and be subject to all the conditions and restrictions of this act : *Provided further, however*, that the bonds of the United States shall not be issued to such company for a greater amount than is hereinbefore provided, if the same had united with the Union Pacific Railroad on the one hundredth degree of longitude ; nor shall such company be entitled to receive any greater amount of alternate sections of public lands than are also herein provided."

It thus appears that whilst the company was authorized to extend its road west of the one hundredth meridian, if it saw fit so to do, it was entirely in its option ; and if it did, it was not to expect, or have, any subsidy of government bonds for such extension.  It is found by the court that the company actually extended its road westward as far as Denver, 245 miles beyond the one hundredth meridian ; but did not complete the same to that point, so as to be accepted by the President, until the 19th of October, 1872.

A material question in this case is, whether the whole line to Denver, or only the line which the company was first authorized to construct (which terminated at the one hundredth meridian), is liable to the lien for the government subsidy, and the payment of five per cent of net earnings.  If only the latter, then the time of completion was that which is claimed by the government, namely, the second day of November, 1869 ; but the net earnings liable to the claim of five per cent would be only those produced on the first $393\frac{15}{16}$ miles, or if these cannot

be ascertained, then a *pro rata* amount of the whole net earnings of the road.

From a careful examination of the statutes relating to this subject, we are of opinion that, whilst, as to its entire line, the company, in the words of the ninth section of the act of 1864, is "entitled to all the benefits and subject to all the conditions and restrictions of the act;" and is bound to furnish transportation and telegraphic accommodations to the government on the usual terms; yet that the subsidy bonds granted to the company, being granted only in respect of the original road, terminating at the one hundredth meridian, are a lien on that portion only; and that the five per cent of the net earnings is only demandable on the net earnings of said portion. This deduction, we think, is clearly demonstrated by the words of the fifth section of the act of 1862, which creates the government lien for the payment of the subsidy bonds. Those words are that "the issue of said bonds and delivery to the company shall *ipso facto* constitute a first mortgage on the whole line of the railroad and telegraph, with the rolling-stock, fixtures. and property of every kind and description, [and] *in consideration of which said bonds may be issued.*" It is the road and appurtenances, in consideration of which, or in respect of which, the bonds are issued, that is subjected to the lien. This can apply, in the present case, only to the first 394 miles of the defendant's road. And as the lien only applies to this portion, the stipulation for payment out of net earnings cannot reasonably be applied to any other portion of the line.

This view is strengthened by the terms of the third section of the act of March 3, 1869, authorizing the defendant company to assign and transfer to the Denver Pacific Railway and Telegraph Company that portion of its line between Denver and Cheyenne. By that section, the said companies were authorized to mortgage their respective portions of said road (referring to the extension of the Kansas Pacific from the one hundredth meridian to Denver, and thence to Cheyenne) to the amount of $32,000 per mile; a privilege which would hardly have been conceded if the lien of the government bonds was deemed to extend over those portions of the line.

The result of this conclusion is, that only such part of the

annual net earnings of the road as are due to the first $393\frac{15}{16}$ miles are in any event subject to the payment of the five per cent in question.

But inasmuch as the court below, in estimating the net earnings, credited the company for expenditures which are not allowable according to the principles announced by us in the case of the Union Pacific Railroad Company; and as, upon a proper accounting, it may appear that, in some years, the defendant company realized a sufficient amount of net earnings from its first 394 miles of road to pay the interest on the first-mortgage bonds, and leave a surplus applicable to the five per cent payable to the government, it will be necessary to reverse the judgment, in order that a new trial may be had between the parties. It is proper, however, before concluding, that we should indicate our opinion with regard to certain classes of expenditures on which the government and the company are at issue:

The former insists that certain items should be excluded from the account which are claimed by the latter to be legitimate. These items are designated in Schedule C, annexed to the findings of the court below, and are as follows: —

*First.* "Depreciation account, or expense not charged up." This is explained to be the amount necessary to put the road in proper repair, but which was not actually expended for that purpose. We are clearly of opinion that it is not a proper charge. Only such expenditures as are actually made can with any propriety be claimed as a deduction from earnings.

*Secondly.* "Construction account, or improvements and additions to track," &c. This item, according to what we have said in the Union Pacific Railroad case, ought to be allowed.

*Thirdly.* "Equipment account, or replacing and rebuilding rolling-stock, machinery," &c. This item should also be allowed as an expenditure properly chargeable to the earnings of the road, when actually paid out of the earnings and not raised by the issue of bonds or stock.

*Fourthly.* "Real estate purchased for depot grounds, &c., and expenses of same." This item is a proper charge if actually paid out of the earnings, and not raised by bonds or stock.

*Fifthly.* "Expenses of land department." This item is not allowable.

*Sixthly.* "Interest on funded debt prior to government lien." For the reasons expressed in the case of the Union Pacific Railroad Company, this item is not allowable, though the interest annually accruing on the first-mortgage bonds issued upon the first $393\frac{15}{16}$ miles of the road is payable out of the net earnings before the five per cent due the government.

*Seventhly.* "Fifty per cent government earnings withheld" This, as explained in the previous opinion, is not allowable to be charged as an expense.

The judgment of the Circuit Court will be reversed, and the cause ordered to be remanded for a new trial; and it is

*So ordered.*