Drake, Ch. J.,
delivered the opinion of the court:
By the AetJuly 1,1802, ‘ ‘ to aid in the construction of a railroad and telegraph line from the Missouri River to the Pacific Ocean f &c. (13 Stat. L., 489), the Union Pacific Eailroad Company was incorporated, with power “to lay out, locate, construct, furnish, maintain, and enjoy a continuous railroad and telegraph from a point on the 100th meridian of longitude west from Greenwich * * * to the western boundary of Nevada Territory.”
By said act several grants were made by the United States to said company, viz: 1. Eight of way through the public lands; 2. Alternate sections of the public lands over or near which the road should pass; and 3. Bonds of the United States, in aid of the construction of the road, to the amount of $16,000 per mile of road constructed by the company.
These grants were declared by the act to be made on condition that the company, among other things, first, should pay at maturity the bonds issued to it by the United States as aforesaid; and second, that all compensation for services rendered by the company for the government should be applied to the payment of the bonds so issued, and the interest- thereon, until the whole amount of principal and interest should be fully paid.
This second condition was afterwards changed by section 5 of the Act July 2, 1864 (13 Stat. L., 356), declaring that only one-half of the compensation there referred to should be required to be applied to the payment of the bonds issued to the company.
*355 By the 9th section of the act of July 1,1862, the Leavenworth, Pawnee and Western Eailroad Company of Kansas was authorized to construct a railroad and telegraph line from the Missouri Eiver, at the mouth of the Kansas Eiver, to the initial point of the Union Pacific Eailroad on the said 100th meridian of longitude, upon the same terms and conditions, in all respects, ' as were provided in that act for the said Union Pacific Railroad., and to connect at that point with that road. The name of the Leavenworth, Pawnee and Western Eailroad Company was afterwards changed to the “ Union Pacific Railroad Company, Eastern Division” (13 Stat. L., 361); and thereafter was again changed to “Kansas Pacific Eailway Company.” (15 Stat. L., 348.)
By the ninth section of the act of July 2,1864, it was provided that any company authorized by the act of 1862 to construct a railroad from the Missouri Eiver to the initial point aforesaid of the Union Pacific .Eailroad, might construct its road so as to connect with the Union Pacific road at any point westwardly of that initial point; and that “in aid of the construction of so much of its road as should be a departure from the route here-inbefore provided for its road, such company shall be entitled to all the ben efits, and be sidbject to all the conditions and restrictions of this actj” but “that the bonds of the United States shall not be issued to such company for a greater amount than is hereinbe-fore provided, if the same had united with the Union Pacific Eailroad on the 100th degree of longitude.”
Under this authority the Kansas Pacific Eailway Company, instead of constructing its road in a nearly direct line from the mouth of Kansas Eiver to the initial point aforesaid, constructed it through Denver, Colorado, to Cheyenne, Wyoming.
The whole length of its road from the mouth of Kansas Eiver to Denver, is 638 miles. For 394 miles of that distance (which was the distance the road would have traversed if it had connected with the Union Pacific Eailroad at its initial point aforesaid), the Kansas Pacific Eailway Company received the bonds of the United States, as provided by the act of 1862; and for the whole distance of 638 miles it received also the land grant provided by that act.
Under the authority of section 16 of the act of July 2,1864, the Union Pacific Eailroad Company, the Kansas Pacific Eail-way Company, and the Denver Pacific Eailway Company, en *356 tered into articles of union and consolidation on tbe 24th of January, 1880, and thereby became a corporation under the name of the Union Pacific Bail way Company; which company, under and by virtue of said articles of consolidation, it is averred in the petition, succeeded to, possessed, and is entitled to receive from the government of the United States all and singular the grants, benefits, immunities, and guarantees, and to Jo any and all acts and things to be done and performed, and became entitled to, and thereafter held in its own right, all the property, real, personal, and mixed, and all dioses in action, and debts, on whatever account, of, owing, or belonging to either of the companies so consolidated.
This question now presented is connected with the transportation of the United States mail over that part of the line of the Kansas Pacific Eailroad extending from Kansas City, Missouri, to Denver, which, prior to Julyl, 1879, was, by the Post-Office Department, made a mail route, known as “route No. 33,001”; and that department fixed the compensation- for the carrying of the mails over that route at $159.03 per mile from that date; and since then the mails have been carried over said route.
This suit is brought to recover compensation, at that rate, for carrying the mails during the first and second quarters of the year 1880; the aggregate compensation for which, over the whole 638 miles, amounted to $50,065.91.
Of this the sum of $30,885.66 was earned on the 394 miles of the road on account of which the Kansas Pacific Bail way Company received bonds of the United States; and the claimant demands judgment for one-half of that sum.
As to the remainder, $19,180.25, earned on the 244 miles of the road, for which no bonds of the United States were received by the Kansas Pacific Eailway Company, the claimant prays judgment for the whole amount.
To this petition the defendants demur, and the demurrer raises the question whether, upon the facts set forth in the petition, the claimant has any right to recover.
This question arises, first, as to the 394 miles for which subsidy bonds were issued; and it is contended, on behalf of the •defendants, that, notwithstanding the above-cited provision of the act of 1864, declaring that only one-half of the compensation for services rendered to the go vernm ent by the road should be required to be applied to the payment of those bonds, there is yet a right in the government to withhold payment of the other half.
*357 In our opinion there is no just ground for this position. The right of the government to withhold any of the money earned by the company for services rendered to the government, for the purpose of ultimately applying it to the payment of the bonds, rests, not upon any general principle of law,' but upon statute; and when the statute, after requiring all of that money to be so applied, is changed so as to require “only one-half,,” it is a clear authority for the payment of the other half to the company. So far, then, as boncerns the claim for the one'-half of the compensation for carrying the mails over the 394 miles, the claimant appears entitled to recover.
As to the $19,180.25, earned for carrying the mails over the 244 miles, it is claimed on behalf of* the defendants that the. government having paid interest on the bonds, which the company ought to have paid and was bound to reimburse, it should rightfully be permitted to hold that amount for reimbursement, without regard to the question of how far the lien of the mortgage created by the issue of the bonds should extend.
Whether this position be correct is to be determined, not by .any general principle of law or equity, but by the statute. It was under an act of Congress that the bonds were issued, and what results should flow from their issue is to be found only in thatact. No obligationsotherthanthosefoundthere,orinsome other act of Congress, could be laid upon the Kansas Pacific. Railway Company or its successor. It is, therefore, necessary to recur to the legislation of Congress in order to ascertain what provisions are connected with the issue of the bonds.
They are three, namely, 1. That “to secure the repayment to the United States of the amount of said bonds so issued and delivered to said company, together with all interest thereon which shall have been paid by the United States, the issue of said bonds and delivery to the company shall ipso facto constitute a first mortgage on the whole line of the railroad and telegraph line * * *■ in consideration of which said bonds may be issued”: 2. That “one-half of all compensation for services rendered for the government shall be applied to the payment of said bonds and interest until the whole amount is fully paid” i and 3. That “ after said road is completed, until said bonds and interest are paid, at least five per centum of the net earnings of said road shall also be annually applied to the payment thereof.”
*358 These three provisions constitute the whole security which Congress required for the ultimate payment of the bonds and interest. This security that body agreed to accept for that purpose. Whatever further security it might see fit to require could only be declared by statute, and up to this time it has exacted no other.
In reference to the issue of the bonds, and the liability of the company consequent thereon, certain points have been decided by the Supreme Court of the United States, which enter into the settlement of the question now under consideration.
. In United States v. Union Pacific Railroad Company (91 U. S. R., 72), it was held, that it was not the intention of Congress to require the company to pay the interest before the maturity of the principal of the bonds.
In United States v. Kansas Pacific Railway Company (99 id., 455), it was decided that the bonds issued to that company were a lien on that portion only of the company’s road in respect of which they were issued, namely, the 394 miles, and that only such part of the annual net earnings of the road as were due to those miles is subject to the payment of the five per cent.
In United States v. Denver Pacific Railway Company (99 id., 460), the position taken in the next preceding case was reasserted, and in a note thereto, Justice Bradley, evidently speaking for the court, remarked: “ Since delivering the opinion in this case, our attention has been called to the fact that, whilst affirming generally the judgment of the court below, we did not expressly pass upon the question of the right set up by the government to rerain one-half of the amount of compensation due from it to the claimant for the transportation of mails and other public imoperty. This point was not overlooked in rendering our judgment in the case. We cannot conceive on what principle the retention can be claimed, since the object of retaining the compensation for such service or any portion thereof, as expressed in the sixth Section of the' act of 1862, was to apply the amount so retained to the debt due to the government for subsidy bonds granted to the companies that should receive the same. But the claimants in this case received no such bonds, and we decided that neither the company) nor its railroad property, is liable in any way for the payment of any debt incurred for such bonds received by the Kansas Pacific *359 Railway Company. Consequently there is no room for the application of the right of retention in this case, and the judgment of the Court of Claims was properly rendered for the whole amount of such compensation due.”
These rulings of the court of last resort seem to us to settle the question involved in the demand for compensation for mail transportation over the 214 miles. No subsidy bonds were issued for those miles; and therefore no debt is due to the government in respect thereof; and there being no such debt, there can be no retention by the government of any part of the compensa-on.
But another position is found in the brief of the Assistant Attorney-Ceneral, which has not before been taken, so far as we are advised, and which should be considered.
It is claimed that because the Union Pacific, the Kansas Pacific, and the Denver Pacific companies have been consolidated, and so the Kansas Pacific Company and its road have become a part of the consolidated company, therefore the compensation earned on the former road of the Kansas Pacific Company became, after the consolidation, subject to section 2 of the Act May 6, 1878 (20 Stat. L., 56, ch. 96), which is as follows:
“That the whole amount of compensation which may, from time to time, be due to said several companies respectively for. services rendered for the government, shall be retained by the United States, one half thereof to be presently applied to the liquidation of the interest piaid and to be paid by the United States upon the bonds so issued by it as aforesaid, to each of said corporations severally, and the other half to be turned into the sinking fund hereinafter provided, for the uses therein mentioned.”
We are unable to perceive how this section can have any bearing on this case for the following reasons:
1. That act nowhere refers in any way to the Kansas Pacific Railway.
2. The “several companies” referred to in that section cannot be considered to be any other than the companies to which the act, in its terms, applies.
3. The only companies intended to be affected by the act, were manifestly the Union Pacific and the Central Pacific..
4. The bonds referred to in that section are plainly those which had been issued to those two companies, and no other.
. It seems to us clear that the mere perusal of the act must *360 lead to those conclusions. And they are re-enforced by the fact that the act was passed nearly two years before the consolidation of the roads took place. It is therefore not to be presumed to apply to any conditions produced by such consolidation.
This view is strengthened by the consideration, that, by the 16th section of the act of 1864, such a consolidation was expressly authorized; and Congress, with that act before it, made no provision in the act of 1878 looking to the, not improbable, formation of such consolidation. If that body intended in that event to change the previously defined relations toward the government of any road which might thereafter become consolidated with any other of the roads, it would surely have enacted its will in that regard.
It did not enact anything on that subject; and we are therefore led to the conclusion that section 2 of the act of 1878 was intended to apply only to the Union Pacific and Central Pacific roads as they then stood, and to their respective liabilities to the government based on the bonds issued to them, respectively, by the government.
We are led to the further conclusion, that when the Kansas Pacific became consolidated with the Union Pacific, the pre-ex-isting legal relations of the road of the former company to the government, as to compensation for services performed on it for the government, remained unchanged; and that whatever compensation might, after the consolidation, be earned on the road from Kansas City to Denver, must be disposed of just as it would be if no consolidation had taken place.
The conclusion from the whole case presented by the petition is, that the claimant is entitled to recover one-half of the compensation earned by the transportation of the mails over the 394 miles for which subsidy bonds were issued, and the whole ■of the compensatian earned in that way on the remaining 244 miles.
As to the interest claimed on those earnings, the demurrer must be sustained; but as to all the rest of the petition it is overruled.
At the same time with the foregoing decision, the court rendered a decision in the case of the Central Branch Union Pacific Railroad Company v. The United States.
*361 Drake, Ch. J.,
delivered the opinion of the court:
This case differs from that of the Union Pacific Railway Company, just decided, in only one particular, namely, that the compensation demanded is for mail transportation, not over the road of the Central Branch Company, but over other lines of railroad which that company had leased. There is no ground whatever for the government’s withholding payment of any part of that compensation. The demurrer is sustained as to-the demand for interest on the amount earned; but as to the rest it is overruled.