Richardson, Oh. J.,
delivered the opinion of the court:
The claimant is a corporation organized under the laws of California. By authority of the laws of that State it owned and operated during the period covered by the petition 383.67 miles of road which formerly belonged to the following companies, also organized under the statutes of California, all of which *181 have been consolidated and form the present corporation under the laws of said State:
Miles.
1. California and Oregon Railroad Company. 190.08
2. Western Pacific Railroad Company (non-aided part). 24.31
3. San Joaquin Talley Railroad Company.. 146. 08
4. San Francisco, Oakland and Alameda Railroad Company. 23:20
383.67
During said period the claimant corporation also controlled and operated, by lease, under the laws of said State, 1,791.35 miles of railroad which formerly belonged to State and Territorial corporations, as follows:
Miles.
1. Sacramento and Placerville Railroad Company.5.64
2. Stockton and Copperopolis Railroad Company. 49.00
3. Northern Railway Company (including San Pablo and Tulare Railroad Company). 200.14
4. California Pacific Railroad Company. 115.44
5. Southern Pacific Railtoad Company of California (including Los Angeles and Wilmington and Mojave to Needles). 790. 38
6. Los Angeles and San Diego Railroad Company.. 27.60
7. Amador Branch Railroad Company. 27. 05
8. Berkeley Branch Railroad Company. 3.83
9. Los Angeles and Independence Railroad Company. 16.83
10. Western Development Company. .13
11. Sou-.hern Pacific Railroad Company of Arizona. 383.21
12. Southern Pacific Railroad Company of Now Mexico. 168.26-
13. Pacific Improvement Company . .23
14. Galveston, Harrisburg and San Antonio Railroad Company.. 3. 61
1,791.35
No aid iu bonds, as hereinafter mentioned, has been given by the Government to said company or companies as to any portion of said owned and leased 2,175.02 miles of road.
The company also owned and operated about 865.66 miles of railroad constructed by the aid of the United States under the provisions of the Acts of Congress of July 1, 1862 (12 Stat. L., 489), and January 2, 1864 (13 Stat. L., 356), and is indebted to the Government for interest paid on account of bonds issued in its behalf, and is under obligations to pay said bonds and interest at maturity.
Thus, while the company owned and operated about 865.66-miles of road aided by Government-, the greater part of its road, to the extent of 2,175.02 miles, controlled by lease and *182 otherwise, has no connection with the Government by aid or by corporate rights under those acts.
This action is brought to recover compensation for services performed for the United States in transportation over those portions of its railroad above mentioned, in the building of which it has not been aided by the Government.
The defendants file a general demurrer.
The defense relied upon is that the whole of said compensation is required to be retained under the provisions of the second section of the Act of May 7, 1878, chapter 9G, commonly called the Thurman Act (1 Supp. Bev. Stat., 320).
The issue thus raised makes it necessary to give a careful consideration to all the legislation of Congress and the decisions of the Supreme Court in relation to this company and other companies similarly situated. The history of the building of those roads and the general policy of the Government in relation to them has been fully reviewed in former cases and need not be repeated here. (United States v. Union Pacific Railroad Company, 91 U. S. R., 72; Same v. Same, 99 id., 402; United States v. Central Pacific Railroad Company, 99 id., 449; United States v. Kansas Pacific Railroad Company, 99 id., 455; United States v. Denver Pacific Railway Company, 99 id., 460; The Sinking-Fund Cases, 99 id., 700.) We shall confine our consideration to those portions only which throw light on the present controversy.
By the acts of 1862 and 1864 the company was granted the right of way to build its road over the public domain, and did so build it to the extent of about 865.66 miles. In this it was aided by the Government by the issue to it of certain bonds of the United States. For the security and payment of these bonds the following provisions were made by the Act of 1862 (12 Stat. L., 493):
“ Sec. 6. The grants aforesaid are made upon condition that said company shall pay said bonds at maturity ; * * *
“And all compensation for services rendered for the Government shall be applied to the payment of said bonds and interest until the whole amount is fully paid. Said company may also pay the United States, wholly or in part, in the same or other bonds, Treasury uotes, or other evidences of debt against the United States, to be allowed at par;
“ And after said road is completed, until said bonds and interest are paid, at least 5 per cent, of the net earnings of said road shall also be annually applied to the payment thereof.”
*183 And by the Act of July 2, 1864 (13 Stat. L., 356):
“ Seo. 5. * * * Only one-half of the compensation for services rendered for the Government by said companies shall be required to be applied to the payment of the bonds issued by the Government, in aid of the construction of said road.”
It is held by the Supreme Court that those acts accepted by the railroad companies therein named, of which the claimant is one, constitute a contract between the parties which cannot be impaired by the United States without compensation established by due process of law. (United States v. Union Pacific Railroad Company, 91 U. S. R., 72; The Sinkng-Fund Cases, 99 id., 718.)
The question, then, first to be determined, is, what was the contract of these statutes as to the payment of compensation which might become due the company for services rendered to the Government.
The decisions of the Supreme Court, taken together, must be considered as having settled that question.
The act of 1862 provides that “ after said road is completed, until said bonds and interest are paid, at least 5 per cent, of the net earnings of the road shall annually be applied to the payment thereof.”
The Kansas Pacific Sail way Company was one of the roads aided under these acts. The aid extended to the building of 393‡£- miles of road, for which bonds of the United States were issued by the Government as therein provided. But the company built 245-iL6- of additional miles of road on account of which it received no such aid.
An action was brought by the United States against the company to recover 5 per cent, of its net earnings to be applied to the payment of said bonds and interest. The right of the Government to recover 5 per cent, of the net earnings of the unaided part of the company’s road was the main point in controversy. The Supreme Court, reversing the decision of the Circuit Court, held that the net earnings mentioned in the acts of Congress were those only of the aided portion of the road. (United States v. Kansas Pacific Railway Company, 99 U. S. R., 455.)
In the opinion, delivered by Mr. Justice Bradley, the court say:
“A material question in this case is whether the whole line *184 to Denver, or only the line, which this company was authorized to construct * * * is liable to the lien of the.Government subsidy, aud the payment of 5 per cent, net earnings. * * * If only the latter * * * the net earning's liable to the claim of 5 per cent, would be only those produced ou the first 393‡§ miles, or if these cannot be ascertained, then a pro rata amount of the whole net earnings of the road.
“From a careful examination of the statutes relating to this subject, we are of opinion that, whilst as to its entire line, the company, in the words of the ninth section of the act of 1864, is ‘entitled to all the benefits and subject to all the conditions and restrictions of the act,1 and is bound to furnish transportation and telegraphic accommodations to the Government on the usual terms; yet that the subsidy bonds granted to the company, being granted only in respect of the original road, terminating at the one hundredth meridian, are a lieu ou that portion only ; and that the 5 per cent, of the net earnings is only demandadle on the net earnings of said portion.
“This deduction, we think, is clearly demonstrated by the words of the fifth section of the act of 1862, which creates the Government lieu for the payment of the subsidy bonds.
“ Those words are that ‘ the issue of said bonds and delivery to the company shall ipso facto constitute a first mortgage on the whole line of the railroad and telegraph, with the rolling stock, fixtures, and property of every kind and description, aud in consideration of which said bonds may be issued.’
“ It is the road and appurtenances, in consideration of which, or in respect of which, the bonds are issued, that is subjected to the lien.
“This can apply, in the present case, only to the first 394 miles of the defendant’s mad. And as the lien only applies to this portion, the stipulation for payment out of net earnings cannot reasonably be applied to any other portion of the line.”
This decision conclusively settles the question as to net earnings, and defines the statute contract to be to pay over 5 per cent, of those which arise from the aided roads or aided portion of a company’s road, withoutincluding the earnings of thenon-aided parts.
The provision for the application of all compensation for services rendered to the Government is in the same section of the act of 1862, and in the same connection as that of the 5 per cent, net earnings, and is in substantially the same language. If the latter does not apply to the non-aided portions of the roads, as the Supreme Court holds, we are unable to see how the former can be construed so to apply. In both matters alike the statute was dealing only with the roads to be built with *185 Government aid and not with any additional roads and business which the companies might undertake in the future.
In the case of the United States v. Denver Pacific Railway Company (99 U. S. R., 460), the Supreme Court apply the principles of the Kansas Pacific Bail way decision to compensation for services as well as to net earnings. The road of the Denver company was part'of that which the Kansas company was authorized by Congress to build over the public domain under the acts of 1862 and 1864, as to which the rights and privileges of the latter were transferred to the former company, “ subject to all the obligations pertaining to said part of its linev (Act of March 3, 1869, ch. 127, 15 Stat. L., 324), but it was from that part of the Kansas company’s line the building of which the Government did not aid by the issue of bonds. The action by the company was for compensation for services, and tl:e Government filed a counter-claim foro per cent, of the net earnings. The court said, “ the decision in this case is controlled by United States v. Kansas Pacific Railway Company ” (99 U. S. R., 455); and they held that the United States was neither entitled to recover 5 per cent, of its net earnings nor to retain any part of what was due to it from the Government as compensation for services.
This court so understood the effect of the decisions of the Supreme Court when it had before it the cases of Union Pacific Railway and the Central Branch Union Pacific Railroad Company (16 C. Cls. R., 353), and so held. From the decision of the court in those cases no appeal was taken, and the ruling was acquiesced in.
So, again, in the Union Pacific Railway Case (20 C. Cls. R., 102) we said, in reference to those provisions of the subsidy acts: “These provisions apply not only to the Union Pacific Division, but also to the 393^-| miles of the Kansas Pacific Division which were aided by the Government. They do not. apply to the other 245-^- miles of said road, nor to the Denver Pacific Division,” which were not aided under those acts, although both were operated by the Union Pacific Railway Company. The point now in issue was not argued or raised in the latter case, the only matter in controversy in regard to that branch of the case being as to what proportion of the net earnings of the whole line of the road should be paid on account of the aided portion. It seemed to be conceded that the sub *186 sidy acts did not apply to the non-aided portion of the road. On appeal no exception was taken to the action of this court in that particular.
On the part of the defendants it is now claimed that they are required by section 2 of the Act of 1878 (1 Supp. Eev. Stat., 320) to retain the whole amount of compensation due from them to the claimant for services rendered the Government by said •company over all its roads and branches, including those parts which have never- received any aid from the United States under the acts of 1862 and 1864, and which are chartered, run, umd operated under the laws of the State of California or other local laws.
In the Sinking-Fund Cases (99 U. S. R., 718) the Supreme Court held that “the United States cannot, any more than a State, interfere with private rights, except for legitimate governmental purposes. They are' not included within the con.stitutional prohibition which prevents States from passing laws impairing the obligations of contracts, but equally with the States they are prohibited from depriving persons or corporations of property without due process of law.”
The opinion in that case proceeds upon the ground that while •Congress might so regulate the affairs of the aided companies within the scope of the contract acts of 1862 and 1864 as to require asinking fund for the payment of the subsidy bonds to be established from their earnings, any requirement materially altering the contract would be held unconstitutional and of no •effect,
The Chief Justice says, in the same opinion:
“The contract of the company in respect to the subsidy is to pay both principal and interest when the principal matures, unless the debt is sooner discharged by the application of one-half the compensation for transportation and other services .rendered for the Government, and the 5 per cent, of net earnings as specified in the charter.”
We have already seen that the court decided in the Kansas Pacific Railroad, Case (99 U. S. R., 457), that the 5 per cent, of net earnings, according to the charter, was to be paid only out of the net earnings of the aided part of the companies’ roads, .and that; the same construction applies with like force to the earnings of the companies for services to the Government. 'The earnings, therefore, of the non-subdized parts are held by *187 the Supreme Court to be outside of the contract. To require the companies, then, to pay into the sinking fund money earned by them in other business or on other roads chartered by State authority and not aided by the National Government, would seem to be a material alteration of the contract, which Congress could not make without the consent of'the other contracting parties, if it so intended, which is not to be presumed.
A rule ot interpretation for such a case is presented by Judge Story, when, speaking for the Supreme Court in United States v. Coombs (12 Pet., 75), he says, in reference to a section of an act of Congress then under consideration :
“ If the section admits of two interpretations, one of which brings it within and the other presses it beyond the constitutional authority of Congress, it will become our duty to adopt the former construction ; because a presumption never ought to be indulged that Congress meant to exercise or usurp any unconstitutional authority, unless that conclusion is forced upon the court by language altogether unambiguous.”
The second section of the act of 1878 (the Thurman Act) is as follows:
“ Sec. 2. That the whole amount of compensation which may, from time to time, be due to said several railroad companies respectively for services rendered for the Government shall be retaiued by the United States, one-half thereof t<> be presently applied to the liquidation of the interest paid and to be paid by the United States upon the bonds so issued by it as aforesaid, to each of said corporations severally, and the other half thereof to be turned into the sinking fund hereinafter provided, for the uses therein mentioned.”
Taken wholly by itself the language of this section is broad enough to sustain the position urged on behalf of the defendants. But that is a narrow and superficial view, not to be adopted if the words can be otherwise so interpreted as not to conflict with contract relations and constitutional limitations. The act was passed “ to alter and amend the act of 1862 and the act of 1864.” Section 13 expressly enacts “ that each and every of the provisions in this act contained shall severally and respectively be deemed, taken, and held as in alteration and amendment of said act of 1862 and of 1864, respectively, and both of said acts.” It must, therefore, bé taken, read, and construed with reference to the pre-existing acts, and in the light of the judicial decisions thereon. “ The correct rule *188 of interpretation,” says the Supreme Court in United States v. Freeman (3 Howard, 564), “ is that if divers statutes relate to the same thing they ought to be all taken into consideration in construing any one of them, and it is an established rule of law that all acts in pari materia are to be taken together as if they were one law.”
The only subject-matter of the contract acts of 1862 and 1864 was the building of roads to be aided by the United States, and the language of the act of 1878 must be held to be confined to the same subject matter, it is notan unreasonable construction, therefore, to hold, in view of the decision of the Supreme Court, that the words of the second section of ihe act of 7878, “The whole amount of compensation which may, from time to time, be due to said ■ several railroad companies respectively for services rendered for the Government,” were intended to apply only to the same services mentioned in the former acts, and were not used for the purpose of introducing a new and additional service nob contemplated by those acts. That is, the word “ whole,” like the word “all” in the act of 1862, and the words “ one-half” in the act of 1864 may be held to qualify “compensation” and not “services.” Thus read, the word “ services” would be interpreted alike in all these acts as applicable only to services on the aided jiortions of the roads.
Had Congress intended by the act of 1878 to apply its provisions to services not included in the former acts and beyond the terms of the contract, it must be presumed that so great and so important a change would have been more explicitly set out.
This interpretation is in harmony with the rules of construction of statutes and the decisions of the Supreme Court, and brings the terms of the act within the limitations of the Constitution.
The result is, that the demurrer is overruled, and judgment will be entered for the claimant unless the defendants elect to plead to the petition.
Nott, J., did not sit in this case, and took no part in the decision.