JAMES D. BELL, ET AL. *v.* ST. JOHNSBURY & LAKE CHAM-
PLAIN R. R. CO.

October Term, 1902.

Present: · ROWELL, C. J., TYLER, MUNSON, START, and WATSON, JJ.

Opinion filed October 28, 1903.

*Railroads—Mandate—Construction—Notice—Sufficiency—*
*V. S. 3803—Net Earnings.*

The right to maintain this bill to reach the net earnings is deter-
mined by the mandate heretofore sent down in this cause.

That mandate limits this right to such orators as had no notice of
the pendency of certain chancery proceedings; and this means
notice according to the practice and usage of the court of chan-
cery in such cases.

A notice published by the solicitors for the orators in those proceedings
of their own motion, and without an order of court or the master,.
has no legal efficacy.

A claim for stationery and printing is not within the provisions of'
V. S. 3803.

In computing net earnings, only such expenditures as are actually
made can be deducted from the gross earnings.

Amounts paid for interest and extraordinary repairs on locomotives·
should be deducted from the gross earnings in such computation.

The expenses of litigation which arose in matters anterior to the
appointment of receivers and with which they had nothing to do
as such, should not be deducted from gross earnings to determine·
the net earnings of the receivership.

APPEAL IN CHANCERY.. Heard on the pleadings, man-
date, report and supplemental report of special masters and
exceptions thereto, and the records and files in the Poland
case, referred to in the opinion, at the June Term, 1902, Cale-
donia County, *Start,* Chancellor. *Pro forma* decree for the
defendant. The orators appealed.

*George W. Wing* for the orators.

*Young & Young* for the defendant.

Rowell, C. J.    The orators are preferred creditors under V. S. 3803 for services rendered and materials furnished to keep the railroad now owned by the defendant in repair, and to run the same, before and at the time it went into the hands of receivers on October 18, 1877.    By their bill they seek to enforce payment of their several demands out of the fund derived from a judicial sale of personal property on which creditors under said statute had a first lien, which sale was ordered and made under the cross-bill of Howe and others, creditors under said statute, filed in the case of *Poland, trustee, v. The Lamoille Valley R. R. Co. and others,* reported in 52 Vt. 144, to which reference is had; and failing this, they seek payment out of the net earnings of the road while in the hands of the receivers.

The original bill, with amendments, was entered in the Caledonia County Court of Chancery at the June Term, 1880, when the orators asked to intervene in the Poland case, then pending in said court on remand from the Supreme Court, and to share in said fund with the orators in the Howe cross-bill, and in the personal property and net earnings of the road, on such terms and conditions as to the court should seem just and equitable.    Such leave was denied, but the orators were permitted to file their bill as an original bill, which they did, and the court proceeded with the Poland case in due course.    Subsequently the orators filed their supplemental bill, to meet the changed condition of things since the original bill was filed; and as the St. Johnsbury & Lake Champlain Railroad Company had come to be the only necessary party defendant, the bill was dismissed as to all the other defendants, either by agreement or order of court.

The decree in the Poland case on the Howe cross-bill, made pursuant to mandate, established the claim of divers of the orators in said bill, and fixed the amount thereof; ordered that the receivers and the mortgagees under the preference mortgage and the first mortgage, which were being foreclosed in said case, should pay said claims in full, with interest and costs, on or before June 1, 1880; adjudged that until such payment, said claims should be and continue a first lien on all the personal property of the railroad companies that went into the hands of the receivers at the time of their appointment, and also on all property of like kind acquired by them after their appointment; that in default of such payment, all of said property, or so much thereof as was necessary for the purpose, should be sold by order of court, and the avails thereof applied *pro rata* in extinguishment of said claims, interest and costs; that if on such sale and application, any portion of said claims remained unpaid, the same should be a first and paramount lien on the net earnings and income of said roads and property, and that the receivers, and all other persons succeeding to the possession, management, and control of said roads and property, should pay over to the clerk of the court from time to time, said net earnings for *pro rata* distribution to said claimants; that the lien on said earnings should continue until full payment should be made, and said cause be kept on the docket until said claims were paid or secured as therein provided, with liberty to the claimants to apply.

And it was further ordered and decreed that said mortgagees should have no right to take possession of said roads and property under the decree of foreclosure, nor to receive the earnings thereof, until said claims were fully paid, unless they should secure the payment thereof as therein provided, in which case they could take possession.

The bill in the case at bar alleges the sale of said property by order of court for about $58,000; payment of all the claims established and allowed in the Howe cross-bill; a settlement and discharge of the receivers; and the taking of possession of the roads by the defendant, organized in the interest of said mortgagees; and prays, among other things, that an account be taken of the value of the personal property at the time it went into the hands of the receivers, and of the earnings of the roads during the receivership, and payment thereout of the orators' claims.

The answer states the substance of the decree in favor of the orators in the Howe cross-bill, and alleges the non-payment of their claims and the failure to secure the same within the time limited; the consequent sale of the property by order of court for $57,450, the defendant being the purchaser; the confirmation of said sale; and that upon such confirmation the court ordered that if the defendant should within thirty days, file discharges of all the claims allowed under said cross-bill, the same should be received as full payment for said property; but on failure to procure and file such discharges, said sale should be vacated, and the possession of said property restored to the receivers; that the defendant did procure and file discharges of all of said claims, which amounted to about $106,000, and also paid a considerable sum in costs.

The answer denies the allegations of the bill concerning net earnings of the roads and property while in the hands of the receivers, and that such earnings were expended in building new road and in permanent improvements on the line, and alleges that all of the earnings during that time were very little if any more than enough to pay running expenses and such repairs of the road as were necessary to keep it in safe condi-

tion to operate, and that the sums expended by the receivers in the purchase of new personal property and in repairing the old, all of which was sold for the benefit of the lien creditors, very largely exceeded all the net earnings of the road and property while operated by the receivers, so that the lien creditors have had the full benefit of all net earnings by the receivers.

The answer admits that the receivers made some improvements on the roads of a permanent character, but alleges that whatever they expended in that behalf was mainly for repairs that were necessary to enable the roads to be safely run and the receivers to perform their duty to the public; that at the expiration of the receivership, the receivers were indebted to divers persons to about the sum of $100,000, which the defendant had to pay or secure before it took possession of the roads, in addition to what it had to pay the lien creditors; that said debts of the receivers were more than all the expenditures made by them upon the roads that could be called permanent; and so the defendant says that no net earnings made by the receivers ever came into its hands in any form; but that whatever there might have been, have already been paid to the lien creditors in the sale of said personal property.

The answer was traversed and testimony taken, and the case heard on the pleadings and the testimony, and the bill dismissed, with costs, and the orators appealed. The case was heard in the Supreme Court at the General Term, 1884, and again at the General Term, 1885, when a mandate was sent down, that as the personal property in the bill mentioned that came into the hands of the receivers, to which the creditors had a right to resort, had been sold by order of court, and the avails thereof distributed and paid to the creditors who came in and proved their claims in said cross cause of

Howe and others, who are not parties hereto,—the orators herein have no equitable right to any portion of said avails; but that the net earnings, if any, of the road while in the hands of the receivers should go to pay debts incurred for operating the road, instead of paying bondholders or expenses for permanent improvements on the road, and that such of the orators as had no notice of the pendency of the Poland case and of the cross cause of Howe and others, have a right to have this bill maintained, to reach the net earnings, if any, of the road while in the hands of the receivers; and that the court of chancery refer the cause to a master, to ascertain and report the net earnings of the road while in the hands of the receivers, and the names of the orators who had no notice of the pendency of the Poland case and the cross cause of Howe and others, and what notice, if any, the several orators had thereof, and to find and report the amount due the several orators; and upon the coming in of the report, to make decree according to mandate.

Pursuant to said mandate, the case was referred to masters, who find and report that the net earnings of the road while in the hands of the receivers, namely, from October 18, 1877, to July 1, 1880, when the defendant took possession, were $39,496.78, subject, however, to such reduction as the court thinks ought to be made on the facts found; and it is out of these earnings that the orators ask to be paid.

It appears that the amount of the claims allowed in the Howe cross cause, with costs, was $103,081.30, and that the defendant paid the same in full before taking possession of the road, thereby paying $45,631.30 more than the price at which it bid off the personal property. Therefore the defendant says, that as it was decreed that if the avails of that sale were not enough to pay said claims, the unpaid balance

should be a first and paramount lien on the net earnings, which should be paid over to the clerk from time to time for *pro rata* distribution to said claimants; and as said sale was confirmed, thereby fixing the avails of it at $57,450,—it should be taken that for the purpose of relieving the net earnings of the lien thereon, and to enable the defendant to take possession of the road at once, it was willing to assume, and did assume, without an accounting, that the net earnings were sufficient to pay the balance of said claims, and therefore paid the same, thereby paying more than the net earnings are now ascertained to be. The defendant contends that it stands the same as it would had it stood back and compelled an accounting of net earnings, and then paid, which would have discharged it from paying now; that the mandate in this case should be construed to mean net earnings, if any, in excess of what the defendant had already paid to Howe and others; that the orators' remedy, if any they have, is against Howe and others for contribution in respect of the net earnings they have received; and that the order alleged in the answer, made on confirmation of the sale,—that if the defendant should within thirty days, file discharges of all the claims allowed under the Howe cross-bill, the same should be received as full payment and satisfaction of the purchase of said property, otherwise the sale should be vacated, and the possession of the property restored to the receivers,—should not be taken to have made the price of the property $103,081.30 to the defendant, but as intended to enable the receivers to operate the road till said sum was paid or secured to the extent of the property and the net earnings, thereby satisfying the lien on both.

But it is to be noticed that the answer does not present the case in that way. It denies that there were any net earnings of any amount, if indeed there were any at all, which

it does not admit; alleges that "whatever there might have been," the lien creditors had the benefit of in the sale of the personal property, because the amount expended by the receivers in the purchase of new personal property and in repairs of the old, very largely exceeded all the net earnings; and denies that any net earnings ever came into the hands of the defendant by way of permanent improvements of the road, which it admits were made to some extent, because the indebtedness of the receivers, which the defendant had to pay, was more than all their expenditures for such improvements. And Judge Poland took the same ground in his arguments for the defendant when the case was here before. He said that there was not only an entire failure to show that the bondholders received in any form any earnings of the road that belonged to another class of creditors, but that it was conclusively demonstrated they did not—that there were no net earnings; that they were quite ready to account on the basis of the doctrine announced in the Poland case, namely, that the net earnings should go to pay debts incurred for operating the road instead of going to the bondholders; and that if the road was improved as claimed, the bondholders had been compelled to restore, and had restored, at least double the amount.

In view of all this, the mandate is not fairly capable of the construction contended for by the defendant. If the court meant, "net earnings, if any, in excess of what the defendant had already paid to Howe and others," it is reasonable to suppose it would have said so. But it did not. That idea is not gatherable from the mandate read by itself, nor when read in the light of the case. On the contrary it would seem that the court regarded the amount paid to Howe and others as paid for the property rather than to have the sale of it set aside, and it go back into the hands of the receivers. And

this view finds support in the wording of the order that discharges filed in accordance therewith "should be received as full payment for said property." These discharges were to be of all the claims allowed under the Howe cross-bill. Nothing is said about the excess above the price at which the property was bid off being treated as a payment on net earnings, and said earnings relieved from the lien of creditors to that extent, which one would suppose would have been said had such been the intention.

We hold, therefore, that the right of the orators in the mandate mentioned to maintain this bill to reach the net earnings, is adjudged and determined by the mandate, and that the case as now presented is merely one of accounting under the mandate.

According to the mandate, only the orators who had no notice of the pendency of the Poland case and the cross cause of Howe and others, are entitled to maintain this bill. The defendant contends that this does not necessarily mean notice by order of court, either by the service of process or publication, but that knowledge as distinguished from such notice is sufficient, and refers to 2 Pom. Eq. 8th ed. § 592, and Story's Eq. § 396, in support of the claim. But we cannot adopt this construction in the absence of laches on the part of the orators. These authors are speaking of what notice will make one a *mala-fide* purchaser, and of cases of contest for precedence among holders of different interests in, or claims upon, the same subject-matter, and not of what is sufficient notice to bar a creditor in cases of this kind. We think the court did not intend to take this case out of the general rule, and that the mandate means, notice according to the practice and usage of the court of chancery in such cases, which is this: When a bill is brought by a part of the creditors, not

only for themselves but for others standing in like situation who may come in and share in the expense, as the Howe cross-bill was, the decree for an inquiry who the creditors are and what the amount of their claims, declares that all the creditors are entitled to the benefit of the decree, and directs the master to cause notice to be given as therein specified for all the creditors to come in before him and prove their debts, and to fix a peremptory day for that purpose, and declares that such of the creditors as do not come in by that day, are to be excluded the benefit of the decree. 2 Smith's Ch. Pr. 2d ed. 261; 2 Daniell's Ch. Pl. & Pr. 3d ed. 1198; Story's Eq. Pl. 7th ed. § 99; *Hallett* v. *Hallett*, 2 Paige, [*15]. All parties beneficially interested are entitled to attend before the master in all proceedings that may affect their interest. 2 Daniell's Ch. Pl. & Pr. 2d ed. *1355; and this rule applies not only to the parties of record, but also to those who are *quasi* parties by having come in under the decree, who are entitled to notice of all proceedings that may affect their interest. Ib. *1358; and the party conducting the cause before the master must take care that all parties entitled to attend have had notice as directed. Ib. *1355.

Although a master was appointed to take an account of the debts due to Howe and others, orators in said cross cause, and to all other creditors whose debts were like theirs, yet no debts were proved before the master except those of the orators in that cause. The order of reference is not before us, but we infer that it contained no direction for notice to creditors to come in, and no declaration of exclusion if they did not come in, for the master gave no such notice, as sufficiently appears, though more by implication than by direct finding. The solicitors for the orators in the cross cause, of their own motion, and without an order of court or of the master,

caused an advertisement to be printed three weeks successively in a St. Johnsbury paper, asking all creditors to bring in their claims to them and have them paid. But this notice, of course, had no legal efficacy. Thus it appears that none of the orators in this case had legal notice of the proceedings before the master in that case, and therefore none of them are barred thereby. "The principle is as old as the law, and of universal justice, that no one shall be personally bound until he has had his day in court, which means, until citation is issued to him, and an opportunity to be heard is afforded." Field, J., in *Mason* v. *Eldred,* 6 Wall., at page 237.

The claim of M. B. Warren for stationery and printing, allowed at $856.82, cannot be recovered here, as it is not within the statute. It makes no difference that it was allowed without objection, especially as the masters allowed it subject to the opinion of the court on the facts found. With this claim out, the aggregate amount of the claims allowed is $19,001.13, which amount is recoverable here if the net earnings are sufficient, with interest on the principal thereof from June 7, 1892, the date to which the masters computed interest.

The net earnings reported are the excess of gross earnings are sufficient, with interest on the principal thereof from accounts were kept by the receivers. There are sixteen items, aggregating $111,805.78, that were not treated by the receivers as operating expenses, but were classed by them as "expenses in addition to operating expenses." The defendant claims that $4,551.08 of No. 4 of these items, which is $5,864.23 for "new fences built during the receivership," and all of items 5, 9, and 16, amounting in the whole to $14,-797.75, should be deducted from gross earnings, thereby making the net earnings $24,699.75.

As to item 4 the masters find that when the receivers took possession of the road, seventy miles of it had no fence; that

upon fifty miles of it there was a fence that had been built from four to seven years; that the receivers expended the amount of said item for new fences built; and that the average life of a railroad fence of the quality of the fence built on this road, is fifteen years. They were unable to find whether anything was expended by the receivers in repairing fences, but find that the full amount of this item was an expense for permanent improvements, and not an operating expense that should be deducted from income to find net earnings, but say that if the court holds that the net earnings reported should be reduced by a sum expended in new fences sufficient to keep the old fences good, they find that the expense of keeping in repair the fences already built when the receivers took the road, would have been $4,551.08 during the receivership.

But we cannot hold this, for no actual expenditure was made for such repairs, and only such expenditures as are actually made can with any propriety be deducted from gross earnings.      *United States* v. *Kansas Pacific Railway Co.,* 99 U. S. 455, 459.

Item 5, $2,433.28 for interest, and item 9, $1,500 for extraordinary repairs on locomotives, must, on the findings, be deducted from net earnings.

As to item 19, $6,313.39 for litigation, the masters find in their supplemental report that the litigation arose in matters anterior to the appointment of the receivers, and with which they had nothing to do as such, and that the expenditure did not accrue in any manner in their operation of the road, except as to matters stated in their original report. But those matters do not militate against this finding, under which this item cannot be deducted. Thus, by deducting $3,933.28, the amount of items 5 and 9, the net earnings are reduced to $35,563.50, at which sum they are adjudged and established.

*Decree reversed and cause remanded with mandate that the bill be dismissed as to the orator Warren, with costs in this court, but that a proper decree be entered for all the other orators in accordance with this opinion, with costs in this court. Let the question of costs below be there determined.*