Mr. Justice Reed
delivered the opinion of the Court, as ■ follows:
This case involves the right of the Government to deduct from the public terminal-to-terminal tariffs of a railroad over a route,, partly of land-grant aided mileage, identical with part of the mileage of another earlier constructed route of the same road between the same terminals, sums based upon the higher proportion of land-grant aided mileage in this latter route. On ac *551 count of the importance of the question in administration, certiorari was granted.[1]
The carrier owns and operates two lines of railroad between Portland, Oregon, and Roseville, California, and Davis, California, both southern points being on the Central Pacific, now the Southern Pacific, Railroad in California. From the California junctions, there, is direct connection over the same Southern Pacific rails into San Francisco. The older line is called the Siskiyou, the newer the Cascade Route. For a considerable portion of the distance between Portland and San Francisco, the two routes are identical. There are two differences; one is between Eugene, Oregon, and Black Butte, California. On the west the Siskiyou Route passes through Grant’s Pass and Siskiyou, a distance of 300 miles, to connect Eugene and Black Butte. The eastern, or Cascade Route, joins the same two points by a shorter (275 miles) line through Natron and Klamath Falls. The second deviation is between Tehama, California, and Davis and Roseville respectively. Here the Siskiyou Route is to the east, 104 miles long, and the Cascade Route to the west, 110 miles.
Where the routes are identical, some of the mileage is land-grant aided. Some is not. The mileage of the Siskiyou which is different from the Cascade is largely land-grant aided. None of the Cascade Route, except where it uses the same rails as the Siskiyou, has land grants. Based on the proportion of aided mileage and the percentage of deduction allowed to the Government from the tariffs charged private shippers, the United States, between San Francisco and Portland, is entitled to a land-grant deduction via the Siskiyou Route of 42.792 per cent. Via the Cascade Route, the deduction is 17.801 per cent. There are slight variations for East Portland.
During December, 1931, and January, 1932, the carrier transported, in both directions, certain property of *552 the United States on Government bills of lading from Portland or East Portland to San Francisco. No directions were given by the Government as to the routes over which the shipments were to move. _ While before November 11, 1931, the terminal-to-terminal rates over the two routes were the same, after that date authorized revisions resulted in a rate competitive with water borne commerce over the Cascade and a higher rate over the Siskiyou. These public tariffs were so much lower over the Cascade than they were over the Siskiyou Boute, that the net cost to the Government, after the deductions deemed applicable by the railroad, was less over the Cascade than it was over the Siskiyou, despite the higher percentage of deduction allowed the latter route.
The Government was billed on the Cascade tariffs with deductions for land-grant mileage of about 17 per cent. It paid on the basis of the Cascade tariffs but deducted on the ratio of the land-grant to total miles between the terminals on the Siskiyou Boute, or some 42 per cent. The Government claims that it is entitled to the lowest rate, between the terminals, less the percentage of deduction over the original land-grant aided route. The carrier protested and brought this action in the Court of Claims to recover the difference between the Cascade tariffs less the Cascade ratio of land-grant mileage and that paid by the Government, the Cascade tariffs less the Siskiyou ratio. The Court of Claims, after making special findings of fact, adjudged that the carrier was not entitled to recover and dismissed its petition.
The Government obtained concessions from the established tariffs by virtue of the acceptance by the carrier of grants of land, ten alternate sections per mile on each side of the line,' to aid in .the construction of a railroad as described in the statute authorizing the conveyance (14 Stat. 289). This statute was similar in form to the land grant construed, in Burke v. Southern Pacific Railroad Company (234 U. S. 669), and upon compliance with its requirements became a contract, “obligatory on both” the carrier and Government. The carrier agreed it should “be and remain a public highway for the use of the government of the United States, free of all toll or other charges upon the transportation of the property or troops of. the United States; and the same shall be transported over said road at the cost, *553 charge, and expense of the corporations or companies owning or operating the same, when so required by the government of the United States.” The authorization was “to lay out, locate, construct, finish, and maintain a railroad and telegraph line between the city of Portland, in Oregon, and the Central Pacific Railroad, in California, * * The road was located in accordance with these requirements.
In December, 1887, the Siskiyou Route was finished. The road running from its southern terminus at Rose-ville to San Francisco had been finished in 1870. This gave a through route from San Francisco to Portland, 774.16 miles long with 663.16 land-grant aided. The Cascade Route was built later in small sections primarily for local service or links in other projected distinct railroad undertakings. The California deviation from the Siskiyou between Tehama and Davis was finished in 1882. The Oregon section, forming with that portion of the Siskiyou an irregular ovoid figure, was put together between 1905 and 1926, being completed September first of the latter year. This route is 725.03 miles between Portland and San Francisco with 258.13 miles built with grants in aid. Each route is necessary for adequate transportation service to the areas traversed. At the time of the completion of the Cascade and until November 10, 1931, the tariffs over the two routes between the terminals were the same.
On May 23, 1928, there was enacted an act for the relief of the land-grant railroad operated between East Portland, Oregon, and Roseville, California (45 Stat. 722-723). As Roseville is the junction terminal of the Siskiyou and is not served by the Cascade, this description covers only the Siskiyou line built under the 1866 act. By its terms, the Government relinquished its privilege of free transportation and accepted in lieu thereof a right to the same rate as is paid to other land-grant roads. This is fifty per cent of the public tariff for land-grant aided mileage.[2]
The Act of 1866, granting the aid, specified, only generally, the route of the new road. It was to begin at some point on the Central Pacific Railroad in the Sacra *554 mento Valley and thence run northerly to Portland. By the grant of millions of acres of public lands, the Government prepaid for transportation over the line, wherever it might be built. (L. & N. R. R. v. United. States, 267 U. S. 395, 402.) It was entitled to service for its property or troops without further cost from whomsoever owned or operated the aided facility between the Central Pacific and Portland. (14 Stat. 240). By the 1928 act, the Government agreed, for the “relief of the land-grant” road, to put it upon the same basis as other land-grant roads. By this concession, no change was made in the extent of the obligation to give land-grant service.
The two acts are quite clear in their requirement that the company which constructed the road or its successors in ownership or operation should transport the property or troops of the United States over the railroad at the rate fixed by their provisions. The uncertainty as to the meaning arises in the application of the right of transportation to the mileage. On completion of the original project between Portland and the Central Pacific, there was a definite right of way, the present Siskiyou Route, with every mile between East Portland and the Central Pacific aided by land grants. This same situation existed as to all or parts of other bond or land aided roads.[3] Soon there were changes and shortening of these lines. The Government was faced with the problem of the proper ratio of land-grant or bond-aided deductions or allocations to be applied where.new non-aid mileage is used between terminals formerly served in a higher proportion by land-grant mileage. Cut-offs and the elimination of curves furnished occasion for these decisions. *555 Thus in 1888 in a ruling as to transportation services rendered by the Central. Pacific Railroad, where the Central had three lines from Sacramento to San Francisco, with varying bond-aided mileages, the Comptroller of the Treasury ruled, when the road sought to render statements for the line actually used, that all United States accounts should be stated in .terms of the bond-aided mileage of the original route. As the amounts due to the carrier were applied to retirement of the bonds in aid, this ruling preserved the charges for’this purpose. This ruling has been followed in roads aided by land grants. The long continued administrative interpretation has decided weight in reaching a conclusion upon •the construction of this contract, particularly when the Congress after such interpretation gives up a right for free transportation between the terminals. Any doubt must be resolved in favor of.the Government.
The construction adopted in the Court of Claims was reached in United States v. Northern Pac. Ry. Co. (80 F. (2d) 655), where there was a shortening of 94.24 miles in the through route between St. Paul and’ Seattle by means of a cut-off. In that case, too, the old route was maintained for local use.
It is. urged, however, that in this instance we have a new line, an addition, rather than a cut-off in or a shortening or straightening of .an original line. (United States v. Kansas Pac. Ry. Co., 99 U. S. 455; United States v. Denver Pac. Ry. Co., 99 U. S. 460; United States v. Central Pacific R. R. Co., 118 U. S. 235.) So far as terminal-to-terminal transportation is concerned, the Cascade Route 'does not function as a new line of an addition. It is- simply another way of carrying, goods by the same railroad between San Francisco and Portland. By which route the shipment moves is immaterial on the question of deduction for land grants. The conclusion that the lowest .public tariffs are to have land-grant deductions based upon the proportion of the land-grant mileage in the original line, seems consonant with the purpose of the acts.
Mr. Justice Butler delivered a dissenting opinion, in which he was joined by Mr. Justice McReynolds and Mr. ■Justice Roberts.
Mr. Justice Douglas took no part in the consideration or ■decision of this case. • ' ■

 Cf. Schedule of Land-Grant and Bond-Aided Railroads of the U. S., Office of the Quartermaster General of the Army, Circular No. 4, February 1, 1922. This shows the land-grant mileage in the united States at the date of issue. In order to obtain a share of government traffic, non-land-grant roads have entered widely into freight land-grant equalization agreements by which they agree to carry freight, routed over their lines at “the lowest net rates lawfully available,, as derived through deductions account of land-grant distance. * * *” Cf. Circular 3, Feb. 6, 1935, Office of Quartermaster General, War
Department, Freight Land-Grant Equalization Agreements.

 Lake Superior & Mississippi R. R. Co. v, United States, 93 U. S. 442, 454, 455 ; L. & N. R. R. v. United States, 273 U. S. 321, 323. Act of June 7, 1924, e. 291, 43 Stat. 477, 486. This act determined the proportion of the regular tariff to be paid for the transportation.

 The laws relating to land-grant and bond-aided railroads contain several types of conditions. The most prevalent condition was that “the said railroad shall be and remain a public highway for the use of the Government of the United States, free from toll or other charge upon the transportation of any property or troops of the united States.” This was construed to require the railroad to furnish only free use of the rails and permanent structures. Lake Superior & Mississippi R. R. Co. v. United States, 93 U. S. 442. * * *
Some of the grants went further and required the railroad to furnish free transportation. * * * Others authorized the railroad to charge for Government transportation, subject to regulations which Congress might impose restricting such charges. * * * The Act of July 1, 1862, 12 Stat. 489 (Missouri Pac. Ry.), provided for fair and reasonable rates for Government transportation, not to exceed the amounts paid by private parties for the same kind of service. See Schedule of Land-Grant and Bond-Aided Railroads of the U. S., Office of the Quartermaster General of the Army, Circular No. 4, February 1, 1922.